In re the MARRIAGE OF Donna and Scott ANLIKER.

Upon the Petition of Donna Anliker, Appellee,

And Concerning Scott Anliker, Appellant.

No. 03–1371.

Supreme Court of Iowa.

April 1, 2005.

Michael J. Schilling of Cahill & Schilling Law Office, Burlington, for appellant.

Scott E. Schroeder of Schroeder Law Office, Burlington, for appellee.

LAVORATO, Chief Justice.

In this dissolution of marriage proceeding, Scott Anliker appealed from the district court's award of spousal support in the form of traditional alimony to his spouse Donna Anliker and from the court's division of marital debt. We transferred the case to the court of appeals, which reversed the award of spousal support in the form of traditional alimony and awarded her, in lieu of this form of support, rehabilitative alimony. The court affirmed on the issue of debt division. We granted Donna's application for further review. We affirm the court of appeals decision on the division of debt issue. However, we vacate its decision on the spousal support issue, concluding the district court correctly ordered spousal support in the form of traditional alimony. Because of the conclusions we reach, we affirm the district court judgment in all respects.

## I. Background Facts.

Donna and Scott were married on December 27, 1984. At the time he was twenty-one and she was thirty-three. Donna had three children from a previous marriage, two of whom lived with Donna and Scott and the other child lived with his father.

The parties decided that Donna should stay home and care for the children rather than look for outside employment and incur transportation and child care expenses. Donna, however, did work at a variety of jobs from 1984 through 1996, but never full time.

In 1996 while working at a gas station, Donna fell and injured her left knee. She had multiple surgeries on her knee as a result of the fall, including knee replacement. She has never fully recovered from the injury. Her left leg is crippled and is one inch shorter than her right leg, causing her to hobble as she walks. The difference in leg length affects her hips and back. She anticipates additional surgeries as a result of her injury.

In addition to her knee condition, Donna has other health problems. Her left kidney was removed several years before trial of this matter. Her right kidney functions, but there is a cyst in it. Her thyroid was removed shortly before the parties' marriage, and she takes Synthroid because of this. She also takes Premarin, a hormone replacement. These prescriptions cost $40 per month. She also takes over-the-counter pain medication.

Although Donna can drive, she sometimes suffers from leg cramps. She can dress and groom herself, although putting on shoes, socks, and bottoms can be challenging so that she sometimes needs help tying her shoes. She has great difficulty standing for two to three hours at a time.

Donna's earnings from 1972 through 2001 are reflected in a report from the Social Security Administration. During that time span, there were seven years in which she did not earn any income (1973, 1975, 1983, 1997, 1998, 1999, and 2000). She did not work from 1997 through 2000 because of her knee injury. For six of the years she did work (1972, 1974, 1979, 1981, 1982, and 1984), her income was less than $1000. In five of those years (1977, 1978, 1980, 1985, and 1987), her income was between $1000 and $2000. In three of the years she worked (1976, 1986, and 1988), Donna's income was between $2000 and $4000. She earned between $4000 and $7000 for eight of the years she worked (1989, 1990, 1991, 1992, 1993, 1994, 1995, and 2001). Donna's highest income was $7823 in 1996.

In 2001 Donna was employed as a seasonal employee at a toy store where she earned $8 per hour. Because she could not lift, she was told she would not be hired back. Over the year and a half preceding trial, Donna was hospitalized overnight two to three times for severe pain.

Donna currently receives $363.50 per month social security disability benefits because of her knee injury, minus $54 per month for medical insurance, leaving her with net social security benefits of $309 per month. If Donna is able to work, she could earn up to $800 per month without jeopardizing her social security benefits.

Donna received a $30,000 settlement from her work-related injury to her knee. After deducting attorney fees, costs, and medical expenses, she netted $14,000, all of which was spent on marital debts.

In the early 1990s, Donna was injured in an automobile accident and received a settlement of between $7000 and $10,000. The parties applied that money toward the purchase of a home. During the pendency of the dissolution action, the parties sold the home and each netted $5635.57 from the sale. Both parties elected to use their share of the proceeds for expenses and debts.

Scott has a high school diploma; Donna earned a GED. At the time of trial, Scott was in good health. Since August of 2000, Scott has worked for Golden Furrow Fertilizer where he earns a gross salary of $1026.04 per week. Scott's job is secure, and he does not intend to change jobs in the immediate future. Donna's supplemental medical insurance of $109 per month and life insurance of $14 per month are deducted from Scott's wages.

## II. Proceedings.

On October 10, 2002, Donna filed a petition for dissolution of marriage. The case was tried on April 18, 2003. The district court identified four issues in its ruling following trial: (1) division of contested debts, (2) Donna's request for spousal support, (3) Donna's request for attorney fees, and (4) liability for court costs.

The court noted that during the twenty-year marriage the parties accumulated very little property and a lot of debt. The court approved the property division proposed by Scott. Finding that Scott, with the greater earning capacity, is more able to assume a greater portion of the parties' debts, ordered him to assume payment of $34,356.01 of the parties' debts and ordered Donna to assume $5633.57. Included in the $34,356.01 is a debt to Scott's parents in the amount of $11,450.82. The court noted that Scott had not made a payment on that debt in the past four years and doubted that Scott would be required to repay it.

In addition, the court awarded Donna spousal support in the form of traditional alimony in the amount of $1250 per month payable until Donna attains age sixty-five or either party dies, whichever occurs first. The court ordered Donna to assume payment of her monthly supplemental health insurance payment and her monthly life insurance payment, both of which had been deducted from Scott's wages.

Finally, the court ordered Scott to pay $1500 toward Donna's attorney fees and the court costs.

Following a ruling denying Donna's posttrial motion, Scott appealed. He contended that the district court erroneously considered hearsay evidence, erred in awarding Donna spousal support in the form of traditional alimony, and the debt division was inequitable.

We transferred the case to the court of appeals. The court of appeals concluded it need not decide the hearsay issue because it could conduct its review without relying on the challenged evidence. The court modified the spousal support award by awarding Donna spousal support in the form of rehabilitative alimony in the amount of $1000 per month for thirty-six months. The court affirmed the debt division.

Donna sought further review, which we granted. As the court of appeals did, we consider all three issues raised by Scott's appeal.

### III. Scope of Review.

■ Because this case is an equitable proceeding, our review is de novo. Iowa R.App. P. 6.4. In such proceedings, we give weight to the district court's findings of fact, especially when considering the credibility of the witnesses. However, we are not bound by those findings. *Id.* R. 6.14(6)(*g*).

### IV. The Hearsay Objections.

■ The first issue Scott raised on his appeal was that the district court improperly admitted and considered exhibits 10 and 13 that constituted hearsay. Exhibit 10 was a copy of clinical notes from a medical appointment Donna had with Dr. Joseph Chen at the University of Iowa Hospitals and Clinics. In exhibit 10 Dr. Chen stated that "[Donna's] left knee replacement would be classified as a poor result with a 30% whole person impairment which equals a 75% lower extremity impairment."

Exhibit 13 was a letter from Dr. John Callaghan to Donna's workers' compensation attorney. Dr. Callaghan wrote that "[Donna's] permanent partial impairment is approximately 50% of the lower extremity and 25% of the entire body.... I would rate it at approximately 50% total body."

Scott's counsel objected to both exhibits as hearsay. In its ruling, the district court relied on both exhibits in its findings concerning Donna's disability.

Like the court of appeals, we find there is enough undisputed evidence apart from these two exhibits supporting Donna's

claim that she is disabled. *See Wilker v. Wilker*, 630 N.W.2d 590, 598 (Iowa 2001) (question of admissibility of evidence is not controlling if appellate court can, under its de novo review, arrive at same result with or without that evidence). Donna has had multiple surgeries on her knee and anticipates more surgery. One leg is shorter than the other because of the injury, she is in constant pain, and she hobbles. She cannot stand more than two to three hours at a time, and she cannot lift. She has been left with one kidney and has a problem with the other kidney. Her thyroid has been removed. Moreover, she receives social security disability payments because of her knee injury.

### V. Spousal Support.

The second issue Scott raised on his appeal was that Donna is not entitled to spousal support in the form of traditional permanent alimony. He asserted that spousal support in the form of rehabilitative alimony was more appropriate, a contention with which the court of appeals agreed. On further review, Donna asks us to vacate the court of appeals decision and affirm the district court's ruling on this issue.

 "Alimony 'is a stipend to a spouse in lieu of the other spouse's legal obligation for support.'" *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) (citation omitted). Such an award is not an absolute right. And whether it is awarded depends on the circumstances of the particular case. *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996). When deciding to award alimony, the district court must consider the factors in Iowa Code section 598.21(3). *In re Marriage of Ask*, 551 N.W.2d 643, 645 (Iowa 1996). Although our review of the district court's award of alimony is de novo, we give that court considerable latitude in

making this determination based on the criteria in section 598.21(3). *Spiegel*, 553 N.W.2d at 319. We will disturb that determination only when there has been a failure to do equity. *Id.*

The factors in section 598.21(3) pertinent to this case include (1) the length of the marriage; (2) the age and physical and emotional health of the parties; (3) the property distribution; (4) the educational level of each party at the time of the marriage and at the time the action is commenced; (5) the earning capacity of the party seeking alimony, including educational background, training, employment skills, work experience, length of absence from the job market; (6) the feasibility of the party seeking alimony becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal; and (7) other factors the court may determine to be relevant in an individual case. Iowa Code § 598.21(3)(*a* )-(*f* ), (*j* ) (Supp.2001).

 We recognize three different types of alimony as an appropriate award of spousal support: traditional, rehabilitative, and reimbursement. *Probasco*, 676 N.W.2d at 184–85. Traditional alimony is "payable for life or so long as a spouse is incapable of self-support...." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989).

 Rehabilitative alimony was conceived as a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.

Because self-sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of

the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses. *Id.* at 63–64 (citations omitted).

■ Reimbursement alimony "is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Id.* at 64. And "[s]imilar to a property award, but based on future earning capacity rather than a division of tangible assets, it should be fixed at the time of the decree." *Id.*

The district court considered these factors in deciding to award Donna traditional alimony as an appropriate form of spousal support. In applying these factors, we think the district court had it exactly right when it made the following findings:

In this case neither party is receiving a substantial amount of property. The property being divided relates to minimal household goods and furnishings as well as Donna's basic transportation. The debts being assigned to Scott are no more onerous to him than the debts being assigned to Donna pursuant to this decree. . . .

While Donna is only 51 years of age, the record supports a finding that her health has deteriorated since 1996 and is not likely to improve. She suffers ongoing pain and incapacity, and even Scott does not believe that she has exaggerated her testimony regarding her physical health. She is currently on several medications and is limited in her ability to alleviate her pain due to her loss of a kidney several years ago. Donna has been determined to be disabled by the Social Security Administration and her sole source of income at this point is her disability benefits, which net her $309 per month. Although Scott feels that any alimony award should be for rehabilitative purposes only, the record does not support such a conclusion. Due to her physical infirmities, Donna is an unlikely candidate for further education or training. She has never been able to put what training and experience she has accrued in her 51 years to practical use in the job market. The Court does not find it to be realistic to think that Donna is employable in her current condition. . . .

This is a long-term marriage of nearly 20 years. Scott has a substantially better earning capacity than Donna, who is permanently disabled. Donna's earning capacity appears limited to her social security disability benefits. Scott continues to have an earning capacity of $50,000 annually or more. Scott will have far greater social security retirement benefits than Donna. Additionally, Scott receives use of a vehicle as an employment benefit and does not currently have the expense of car payments. While Scott is to be commended for his support of Donna's children, which has been ongoing even after they became adults, the Court takes note that the settlements she received for injuries and future disabilities were invested in the marriage and are no longer available to Donna at the very time she needs the money.

■ In view of these findings, which are fully supported in the record and which we adopt, we think the spousal support award of $1250 per month in traditional alimony until Donna attains the age of sixty-five or either party dies was equitable and should not be disturbed. *Cf. In re Marriage of Brown*, 487 N.W.2d 331, 334–35 (Iowa 1992) (spousal support in the form of traditional alimony affirmed where parties were married almost nineteen years, recipient spouse was in poorer health than payor spouse, payor spouse was skilled machinist and recipient spouse

performed unskilled labor and had no specialized skills or training, payor spouse's income was substantially more than recipient spouse's income, and support payments would be taxable to the recipient and tax deductible to the payor); *In re Marriage of Debler*, 459 N.W.2d 267, 268–70 (Iowa 1990) (spousal support award in the form of traditional alimony affirmed where there was a twenty-two-year marriage, recipient spouse lacked skills to earn more than minimum wage, recipient spouse stayed home to care for the parties' children pursuant to the parties' joint decision, recipient spouse had only a high school education, recipient spouse has no pension, and payor spouse was skilled laborer with pension and present income from one job three times what recipient spouse made working three jobs).

## VI. Debt Division.

The last issue Scott raised on appeal was that in light of the spousal support award in the form of traditional alimony the debt division was not equitable. He contends that if the spousal support award is affirmed, Donna should assume more of the debt burden.

Iowa Code section 598.21(1) directs the district court to divide the property "equitably between the parties" after considering a number of factors. Such factors that are pertinent here include (1) the length of the marriage, (2) the property brought into the marriage by each party, (3) the age and physical and emotional health of each party, (4) the earning capacity of each party, (5) the amount of spousal support awarded, and (6) other economic circumstances of each party. Iowa Code § 598.21(1)(*a*), (*b*), (*d*), (*f*), (*h*), (*i*). As the court of appeals noted, adjudicating property rights in a dissolution action has to involve a division between the parties of their marital assets and debts. And in deciding what constitutes an equitable distribution of property, there need not be an equal division if the division is justified and equitable under all of the circumstances and factors set forth in section 598.21(1). *In re Marriage of McNerney*, 417 N.W.2d 205, 209 (Iowa 1987).

Reaching its conclusion concerning the debt division, the district court expressly mentioned and relied on these principles and statutory factors and found:

In this case, the Court's determination will result in a negative award to both parties. The Court has, therefore, determined that Scott, as the individual with the greater earning capacity, is more able to assume a greater portion of those obligations. In reaching that decision, the Court specifically notes its doubt that Scott will actually be required to pay the debt to his parents in the amount of $11,450.82. Deleting that figure from the ultimate total would make Scott's liability obligations as proposed in Respondent's Exhibit A to his final summation significantly less. The Court concludes that the proposed division of the liabilities of the parties as shown in Respondent's Exhibit A is appropriate under all of the facts and circumstances of this case. Under the unusual facts and circumstances of this case the Court believes that the proposed division of liabilities is the most equitable under all of the circumstances and factors required by law .... It is also an appropriate award in light of the Court's determination on Donna's request for spousal support.

We agree with and adopt these findings. One additional factor that the court of appeals considered important on this issue is that Donna's workers' compensation award was applied to the retirement of marital debts. We likewise find this significant as well as the fact that the

parties used between $7000 and $10,000 of Donna's personal injury settlement for the purchase of a home. Each party netted $5635.57 from the sale of the home, which they used to pay expenses and marital debts.

We agree with the district court and the court of appeals that the debt division was equitable.

## VII. Disposition.

Because we agree with the court of appeals on the debt division issue, we affirm its decision on this issue. However, because we disagree with the court of appeals on the issue of spousal support, we vacate its decision on this issue. The con-clusions we reach are in accord with the district court's judgment and for that reason we affirm that judgment in all respects. Costs on appeal are taxed to Scott.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**