## IN THE COURT OF APPEALS OF IOWA

No. 14-1729
Filed June 10, 2015

IN RE THE MARRIAGE OF PAUL FITZGERALD
AND EVONNE FITZGERALD

Upon the Petition of
PAUL FITZGERALD,
      Petitioner-Appellee,

And Concerning
EVONNE FITZGERALD,
      Respondent-Appellant.

_____

      Appeal from the Iowa District Court for Story County, Kurt J. Stoebe, Judge.


      Respondent appeals the spousal support award of a decree of dissolution of marriage. **AFFIRMED AS MODIFIED.**


      Meredith C. Mahoney Nerem of Jordan & Mahoney Law Firm, P.C., Boone, for appellant.

      Brian J. Humke and Ryan G. Koopmans of Nyemaster Good, P.C., Des Moines, for appellee.


      Heard by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Evonne Fitzgerald appeals from the decree dissolving the marriage between her and her former spouse Paul Fitzgerald. The district court awarded Evonne spousal support in the amount of $400 per month until the first of the following: (1) Paul reaches the age of sixty-five; (2) Paul dies; (3) Evonne remarries; or (4) Evonne dies. Evonne contends the amount and duration of the award are inequitable. She also contends Paul should be required to obtain a life insurance policy on his life naming her as the beneficiary to secure the spousal support award. Finally, she challenges the district court's failure to award her attorney fees. We affirm the district court as modified below.

I.

We review dissolution of marriage proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and decide anew the issues properly preserved and presented for appellate review. *See id.* While we give weight to the findings of the district court, those findings are not binding. *See* Iowa R. App. P. 6.904(3)(g); *McDermott*, 827 N.W.2d at 676. We afford the trial court considerable latitude in determining spousal support awards. *See In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). We will disturb the district court's ruling only where there has been a failure to do equity. *Id.* We review an award of attorney fees for an abuse of discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

II.

Spousal support is a stipend paid to a former spouse in lieu of the legal obligation to provide financial assistance. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). A party does not enjoy an absolute right to spousal support after dissolution of the marriage. *See* Iowa Code § 598.21A(1) (2013) (providing that "the court may grant an order requiring support payments to either party"); *Anliker*, 694 N.W.2d at 540. The criteria for determining the entitlement to, and the amount of support, if any, include, but is not limited to, the length of the marriage, the age and health of the parties, the property distribution, the parties' educational level, the earning capacity of the party seeking support, the feasibility of that party becoming self-supporting at a standard of living comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal. *See* Iowa Code § 598.21A.

The determination of the need for spousal support and the amount of any such support depends on the unique facts and circumstances of each case. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the determination of the amount of such support is based on the unique facts and circumstances of each case). The court must equitably balance the spouses' respective prospective needs and means viewed in the light of the standard of living they enjoyed while married. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993) (stating "the ability of the one spouse to pay should be balanced against the needs of the other spouse"); *In re Marriage of Hayne*, 334 N.W.2d

347, 351 (Iowa Ct. App. 1983) (stating a party is entitled to receive support only in an amount sufficient to maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living).

On de novo review, we conclude an award of traditional spousal support is appropriate here. "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410-11. Paul and Evonne were married for over thirty years, marrying on December 28, 1979. Thus, the "durational threshold" has been met. In addition, as will be discussed below, the division of responsibilities between the spouses during the marriage also supports an award of traditional spousal support.

The amount of any spousal support award is "primarily predicated on need and ability." *Id.* at 411. "Need" is an objective determination measured by what is required for a "spouse to become self-sufficient at a standard of living reasonably comparable to that enjoyed during the marriage." *Id.* "The standard for determining need is thus objectively and measurably based upon the predivorce experience and private decisions of the parties, not on some externally discovered and imposed approach to need, such as subsistence or adequate living standards or amorphous notions of self-sufficiency." *Id.* "In

determining need, we focus on the earning capability of the spouses, not necessarily on actual income." *Id.* "In marriages of long duration, the historical record ordinarily provides an objective starting point for determining earning capacity of persons with work experience." *Id.* "With respect to ability to pay, we have noted that [f]ollowing a marriage of long duration, we have affirmed awards both of alimony and substantially equal property distribution, especially where the disparity in earning capacity has been great." *Id.*

In this case, we have a historical record establishing need and ability. Paul and Evonne both earned their bachelor degrees prior to the marriage. Paul initially worked as a police officer for the Waterloo Police Department, and Evonne initially was employed as a social worker. For the next fifteen years, the parties lived in Waterloo, where Paul continued to work as a police officer and continued his education. During that time, the parties had four children, and Evonne assumed the majority of the household and parenting responsibilities. She also continued employment in the social work field. At some point, Paul decided to run for election as the Story County Sheriff, and the family moved to Zearing, Story County. Paul won the 1992 election, and he has been continuously reelected to the position since that time. After the family's move, Evonne initially worked as a daycare provider. As the children aged, Evonne obtained employment outside the home.

At the time of trial, Paul still served as Story County Sheriff, and he planned to seek reelection to one last term in 2016. He was projected to receive $112,687 in salary for 2014, as well as $12,300 from this Municipal Fire & Police

Retirement pension. Paul and Evonne stipulated to divide the pension evenly. Paul thus had annual earnings of approximately $118,837. At the time of trial, Evonne had two sources of income: she was employed by the Mary Greely Medical Center in Ames and as a hospice social worker. Her annual earnings were approximately $41,111 in addition to the $6150 received from Paul's pension, for total earnings of approximately $47,261. The disparity between Paul's income and Evonne's income going forward is approximately $71,576 per year. After Paul's 2016 term has expires, he will have good prospects for future earning potential as a law enforcement professional. He is nationally recognized in the law enforcement community, serving as the Vice President of the National Sheriff's Association. He has considered service as a U.S. Marshal. Evonne does not have similar prospects to materially increase her income. The disparity in income between the parties favors a more significant spousal support award.

Another objective consideration in determining the amount of any spousal support award is the property settlement. *See In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) ("We consider alimony and property distribution together in assessing their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another."). The parties' primary assets were their respective IPERS retirement accounts and the marital home. Paul was fifty-nine years old at the time of trial. Paul's IPERS pension will pay him approximately $7667.68 per month if he begins drawing IPERS at age sixty-five. Evonne was age fifty-six at trial. Her IPERS benefit is projected to be $1928.97 per month if she retires at sixty-two and $2636.69 per month if she

retires at sixty-six. The parties stipulated to divide their pension benefits using the Benson formula, *see Benson*, 545 N.W.2d at 257, and to elect the joint and survivor annuity option with respect to Paul's IPERS benefit, naming Evonne as the contingent annuitant. The marital home was valued at $140,000 with no mortgage obligation. The parties agreed Paul would pay Evonne $70,000 for her share of the equity in the home. As part of the property settlement, Paul agreed to assume most of the parties' debt in the amount of approximately $31,000, much of it related to educational expenses for the parties' children.

Paul contends the district court's award should be affirmed because he assumed much of the parties' marital debt. While it is true that Paul took on most of the parties' obligations, he vastly overstates the financial impact of the debt. The total debt was approximately $31,000, and the debt service on the same is not unduly burdensome if refinanced at prevailing market rates. Even assuming Paul seeks a home equity loan to fund the property settlement to Evonne, his total debt would be approximately $101,000. Given his assets, actual earnings, and future earning capacity, the total debt service obligation is small in comparison.

In her Iowa Rule of Civil Procedure 1.904(2) motion, Evonne sought $1200 per month in spousal support. The district court awarded Evonne only $400 per month because it concluded Evonne's demand was extravagant and she sought to lead a more luxurious lifestyle than she was accustomed. We disagree. While there is no mathematical formula to determine the amount of support, the supreme court noted in *Gust* that it has generally "approved spousal

support where it amounts to approximately thirty-one percent of the difference in annual income between spouses." *Gust*, 858 N.W.2d at 412. In this case, thirty percent of the difference in *approximate net income* (discounting gross income by thirty percent) between the spouses (($118,837 x 7) − ($47,261 x .7) x .3) results in a spousal support award of approximately $15,031 per annum, or $1253 per month.

Against this backdrop, we conclude the amount of the district court's spousal support award was inequitable. Paul and Evonne were married for thirty-five years. Evonne supported Paul throughout the marriage while he pursued his master's degree. She supported him in his career, including moving to Story County to allow Paul to seek elected office. Evonne supported Paul through multiple elections. She supported him in her role as a "sheriff's wife" at various conferences and within the community. There is a significant disparity in income between them, and $400 per month in spousal support does not materially lessen the income disparity. She is nearing retirement age, and has no meaningful opportunity to materially increase her income before she retires. Evonne's plan to move into a two-bedroom apartment in a cooperative costing $1200 per month does not strike us as extravagant—the costs include utilities and maintenance of common areas, important considerations for a retiree—given that the Fitzgeralds lived in a five bedroom home on an acreage prior to their separation and divorce. Given the foregoing considerations, on de novo review, we conclude an alimony award of $1200 per month is just and equitable.

We address the duration of the award. The *Gust* court stated that "an award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage." *Id*. Paul conceded during oral argument that the duration of the award should be extended until such time as he turns sixty-five or begins to draw from his IPERS retirement account, which ever event occurs later. Given that Evonne's income will increase when Paul begins to draw IPERS due to her receipt of the *Benson* percentage of his pension, we agree the decree should be modified in accord with the concession.

We address Evonne's request that Paul obtain life insurance to insure payment of his spousal support obligations. "The general rule followed in Iowa is that alimony payments are presumed to terminate at the death of the payor." *In re Marriage of Weinberger*, 507 N.W.2d 733, 736 (Iowa Ct. App. 1993). However, section 598.21A "is broad enough to permit alimony payments after death." *Id*.; *see* Iowa Code § 598.21A(1) (providing "the court may grant an order requiring support payments to either party for a limited or indefinite length of time"). We conclude that requiring Paul to purchase life insurance is unwarranted. Evonne has not provided any information regarding the cost of any such life insurance policy. Further, it is our understanding that Evonne is designated as a partial beneficiary of Paul's preretirement IPERS death benefit, which is all she would have received if the parties had remained married. Finally,

as noted above, Evonne is also named as the contingent annuitant of Paul's post-retirement IPERS benefit.

### III.

The court next addresses Evonne's request for trial and appellate fees. An award of attorney fees rests in the sound discretion of the district court and should not be disturbed on appeal in the absence of an abuse of discretion. *See In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, *see Sullins*, 715 N.W.2d at 255, and fees awarded must be fair and reasonable. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Evonne requested trial fees in the amount of $18,282.20. The district court declined to award her any fees. Evonne has not identified with any specificity in what manner the district court abused its discretion in denying her fee request, and we find none.

With respect to appellate costs, "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." Iowa R. App. P. 6.1207. Appellate costs do not include appellate attorney fees. Although appellate attorney fees are not awarded as a matter of right, we may award such fees as a matter of discretion. *See In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). Evonne requested appellate attorney fees in the amount of $8550. "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the

request was obligated to defend the decision of the trial court on appeal." *Id.* Because Evonne was the prevailing party in this appeal, court costs shall be taxed to Paul, and we further direct that Paul shall be responsible for Evonne's appellate attorney fees. *See Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 696-97 (Iowa 2010) (affirming it is an "abuse of discretion to divide costs equally between the parties when one party was fully successful on appeal").

### III.

For the foregoing reasons, the decree of dissolution of marriage is affirmed as modified. Paul shall pay Evonne spousal support in the amount of $1200 per month until Paul reaches the age of sixty-five or begins to receive distributions from IPERS, whichever occurs later. In addition to the foregoing condition, the award of spousal support shall also terminate upon the earliest of the following conditions: (1) Paul dies; (2) Evonne remarries; or (3) Evonne dies. All costs of this appeal shall be taxed to Paul, and Paul shall pay Evonne's appellate attorney fees in the amount of $8550.

**AFFIRMED AS MODIFIED.**