## IN THE COURT OF APPEALS OF IOWA

No. 14-1766
Filed November 12, 2015

IN RE THE MARRIAGE OF JILL EILEEN SHEPPERD
AND DOUGLAS DUANE SHEPPERD

Upon the Petition of
**JILL EILEEN SHEPPERD,**
     Petitioner-Appellee,

And Concerning
**DOUGLAS DUANE SHEPPERD,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Cass County, J.C. Irvin, Judge.


An ex-husband appeals the dissolution decree claiming the property distribution is inequitable and the spousal support is inappropriate. **AFFIRMED.**


James W. Mailander of Mailander Law Office, Anita, for appellant.

Bryan D. Swain of Salvo, Deren, Schenck, Swain & Argotsinger, P.C., Harlan, for appellee.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Douglas Shepperd appeals the decree dissolving his sixteen-year marriage to Jill Shepperd, challenging the property settlement and the award of spousal support. We affirm.

## I. BACKGROUND FACTS

Douglas and Jill were married on March 14, 1998.[1] At the time of trial, Douglas was fifty-two, and Jill was forty-three years old. When the parties married, Jill was working as a welder. Later, she finished her associate's degree and started to work as a clerk at the Cass County Clerk's office in 2002. She currently earns $35,970 per year. Douglas has been working as a farmer during the course of their marriage. His earning capacity was in dispute at trial. Although he testified that his income was $170 in 2011, $30,795 in 2012, and $4561 in 2013, the district court found that his earning capacity is $50,000 per year.

In 2001, Douglas's parents deeded a homestead with fifteen acres of pasture and timber ground to Douglas. The parties agreed that the value of this gift was $35,000. The parties both put considerable effort into remodeling this home, and the value of the property increased during the course of the marriage. The current appraised value of the property is $134,250. Douglas also brought 39.45 acres of pasture and timber ground into the marriage, valued at $30,000. Both parties agreed that this property has not had any improvements done to it during the marriage. The appraised value at the time of trial was $104,400.

---

[1] During the course of their marriage, the parties had two children. They settled all issues concerning the children.

The parties disagreed on the distribution of the household contents they accumulated during their marriage. Jill provided a thorough list of the contents and her desired distribution, which was adopted by the district court. During the trial, the parties disputed the existence and ownership of a large amount of grain and crops from 2013 and 2014. The district court found Douglas had grain on hand with a value of $70,500 in 2013 and crops valued at $126,402 in 2014.

The district court made a division of property, awarding all the real estate to Douglas, allocating the remaining assets and liabilities, and ordering Douglas to pay Jill $75,000 in order to equalize the property distribution. Based on the parties' earning capacities, the district court also ordered Douglas to pay Jill spousal support in the amount of $400 per month until Jill reaches the age of sixty-five, dies, or remarries.

Douglas is now appealing the distribution of the assets. He also asserts the district court's award of alimony is not equitable, and he claims the payments should cease well before Jill reaches age sixty-five.

## II. SCOPE OF REVIEW

Our review of the district court's dissolution decree is de novo. Iowa R. App. P. 6.907; *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009). We give weight to the trial court's factual findings, especially its determinations of credibility, but we decide the issues anew. *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003). As we base our decision on the facts of each case, precedent is of little value. *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

## III. ANALYSIS

We examine the entire record and adjudicate anew the issue of property distribution. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will disturb the district court's ruling only when there has been a failure to do equity. *Id.* Marital property is divided equitably, considering the factors in Iowa Code section 598.21(5) (2013). *Id.* at 678. "An equitable distribution of marital property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *Id.* at 682 (quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013)). "Equality is, however, most often equitable," and Iowa courts generally insist upon equal or nearly equal division of marital assets. *Id.* We keep in mind that "there are no hard and fast rules governing economic issues in dissolution actions." *Id.* Our decision depends on the particular facts relevant to each case. *Id.*

### A. Real Property Division

The district court stated: "The Court finds it appropriate that the appreciated value of the properties be considered in a property distribution." Douglas argues that Jill is not entitled to the original value of the homestead with its fifteen acres but only the increase in the value of the homestead. Douglas also argues that Jill should not be awarded one-half of the appreciated value of the 39.50 acres of timberland since this land is premarital property, no improvements have been made to this land, and any increase in value was merely fortuitous.

Iowa Code section 598.21(5) requires "all property, except inherited property or gifts received by one party," to be equitably divided between the parties. Iowa Code § 598.21(5). "Premarital property may be included in the divisible estate*." McDermott*, 827 N.W.2d at 678. "Property brought to the marriage by each party" is merely one factor among many to be considered under section 598.21. Iowa Code § 598.21(5). Other factors include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case. *Id.* It is not appropriate to emphasize how each asset appreciated, fortuitously or laboriously, when the parties have been married for sixteen years. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). In the present case, both parties have contributed substantially to their marriage.

Douglas apparently understands the district court's ruling to mean that the entire value of all the real estate was ordered divided in the property distribution. He then argues that only the post-marital appreciation value of the homestead property should be divided, and that none of the 39.50 acres should be divided. Without interpreting the precise meaning of the district court's ruling on this issue, we determine that it is equitable and appropriate to equitably divide the post-marital appreciation value of all the real estate, setting aside to Douglas the premarital values.

**B.      Personal Property**

With regard to the machinery, Douglas claims Jill erred in her valuation of the machinery owned by them during the marriage and complains she did not account for this premarital machinery.  However, in the dissolution decree, the district court specifically found the lists of machinery and valuation submitted by Douglas were an accurate reflection of the machinery currently owned.

Douglas also contends in his appeal that he never owned the 2013 grain listed in his financial statement to the First Whitney Bank.  He claims he merely listed it there at the suggestion of the banker to make his financial position look better.  As previously mentioned, although the reviewing court is not bound by the fact findings of the trial court, it still should give weight to them, especially when considering the credibility of witnesses.  *See Witten*, 672 N.W.2d at 773. The trial court was in the position to not only hear the testimony but also observe the demeanor and evaluate the credibility of each party in the courtroom.  *In re Marriage of Levick*, 154 N.W.2d 102, 106 (Iowa 1967).  We see no reason to disturb the district court's findings on this issue.

Douglas specifically challenges the district court's award to Jill of the antique lamp, the dresser with the marble top, and the toys given by Douglas's grandmother.  He argues that these items have a greater sentimental value to him.  As to the antique lamp and the dresser, we are not convinced that Douglas had a great sentimental attachment to them as a result of buying them from an auction.  We see no inequity in awarding them to Jill.  As to the toys given by Douglas's grandmother, Douglas failed to raise the issue at trial, so he failed to

preserve the issue for appellate review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

### C. Lump Sum Payment

Douglas challenges the lump sum payment to Jill in the amount of $75,000 as inequitable. Although the district court's ruling did not provide a spreadsheet approach to asset and liability distribution, on our de novo review of the evidence and district court's ruling, we determine that the property distribution decision, including the lump sum award, results in an equitable distribution of net assets to each party.

### D. Spousal Support

Douglas contends the spousal support award is excessive. He was ordered to pay Jill traditional spousal support of $400 per month until she reaches the age of sixty-five, either party dies, or she remarries. Douglas argues that no spousal support should be awarded, but if any spousal support is awarded, it should be limited in amount and duration.

Iowa Code section 598.21A(1) provides for spousal support and the factors to consider in determining whether an award should be made.[2] The court

---

[2] Those factors are:
> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time

must balance each party's relative needs against their earning capacity, present standards of living, and ability to pay. *In re Marriage of Williams*, 449 N.W.2d 878, 883 (Iowa Ct. App.1989). "[T]he spouse with the lesser earning capacity is entitled to be supported, for a reasonable time, in a manner as closely resembling the standards existing during the marriage as possible." *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App.1983). The amount of spousal support awarded should not destroy the right of the party providing the support to also enjoy a comparable standard of living. *Id.*

Iowa courts recognize three different types of alimony that may be awarded to the spouse with the lesser earning capacity: traditional, rehabilitative, and reimbursement. *In re Marriage of Anliker,* 694 N.W.2d 535, 540 (Iowa 2005). "Traditional alimony is payable for life or so long as a spouse is incapable of self-support." *Id.* Rehabilitative alimony provides support for "an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Francis,* 442 N.W.2d 59, 63 (Iowa 1989).

---

and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

(g) The tax consequences to each party.

(h) Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

(i) The provisions of an antenuptial agreement.

(j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

Reimbursement alimony is awarded based on "economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Anliker,* 694 N.W.2d at 541. An award of spousal support need not strictly fall into one of the defined categories but can be a combination of types. *Id.* "Whether spousal support is justified is dependent on the facts of each case." *In re Marriage of Hazen*, 778 N.W.2d 55, 61 (Iowa Ct. App. 2009). Although our review is de novo, we give the district court considerable latitude in determining whether to award spousal support based on the statutory factors. *Anliker,* 694 N.W.2d at 540. "We also recognize the trial court was in the best position to balance the parties' needs, and we should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust,* 858 N.W.2d 402, 416 (Iowa 2015). In this case, the district court awarded Jill traditional alimony in the amount of $400 a month until Jill reaches the age of sixty-five, dies, or remarries.

The parties were married to each other for sixteen years. They are both in good physical and emotional health. Douglas leaves the marriage with the same level of education he had when he entered the marriage, while Jill obtained her associate's degree during the marriage. At trial, Douglas testified that his income was $170 in 2011, $30,795 in 2012 and $4561 in 2013. The district court found this testimony was not credible and found his earning capacity was $50,000. After reviewing the transcripts of the parties' testimony and the exhibits, we agree with the trial court's finding. Moreover, "[i]n determining need [for alimony], [courts] focus on the earning capability of the spouses, not necessarily on actual income." Iowa Code § 598.21A(1)(e); *Gust*, 858 N.W.2d at 411 (internal citation

omitted) (quoting *In re Marriage of Wegner,* 434 N.W.2d 397, 398–99 (Iowa 1988)). Since we agree that Douglas's earning capacity is $50,000 a year, we share the district court's skepticism that alimony in the amount of $400 per month will force him to liquidate his farm equipment. Based on the evidence and the factors set forth above, we do not find that the award of traditional alimony in the amount $400 per month constitutes a failure to do equity.

Douglas also asserts that the duration of the alimony is too burdensome on him because when Jill reaches the age of sixty-five, he will be seventy-four and not be able to perform his farming work. The Iowa Supreme Court has recently held that "the question of whether spousal support should be modified upon retirement must be made in a modification action when retirement is imminent or has actually occurred," because "future retirement will ordinarily be considered to raise too many speculative issues to be considered in the initial spousal support award." *Gust*, 858 N.W.2d at 416. In this case, as in *Gust*, we do not know important facts. Since Douglas is a self-employed farmer, it is difficult to predict when Douglas will actually retire. We do not know what the relative financial positions of the parties will be at the time of Douglas's eventual retirement. We do not know whether there will be health considerations that would impact the equities. And, we do not know whether Jill's income will increase in the future. Therefore, we reach the same conclusion as the *Gust* court—the question of Douglas's spousal support obligation upon retirement should be left for a subsequent modification action.

After considering the length of the marriage, the age and health of the parties, the property and debt distribution, the educational level and employment history of each party, the standard of living shared by the parties and their respective current disposable incomes after expenses, and giving weight to the trial court's credibility determination on our de novo review, we find there has been no failure to do equity in this case and affirm the district court's award of spousal support to Jill.  Each party shall pay their own appellate attorney fees and costs on appeal are assessed to Douglas.

**AFFIRMED.**