# IN THE COURT OF APPEALS OF IOWA

No. 16-1939
Filed September 13, 2017

IN RE THE MARRIAGE OF ANDREW RIEHLE PAVLOVEC
AND AMBER MARIE PAVLOVEC

Upon the Petition of
**ANDREW RIEHLE PAVLOVEC,**
Petitioner-Appellee,

**And Concerning**
**AMBER MARIE PAVLOVEC,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.

Amber Pavlovec appeals from the district court's findings of fact,

conclusions of law, and decree dissolving her marriage to Andrew Pavlovec.

**AFFIRMED AS MODIFIED.**

Thomas E. Maxwell of Leff Law Firm, L.L.P., Iowa City, for appellant.

Natalie Hope Cronk of Cronk & Waterman, P.L.C., Iowa City, for appellee.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Amber Pavlovec appeals from the district court's findings of fact, conclusions of law, and decree dissolving her marriage to Andrew Pavlovec. Amber challenges the child-custody and spousal-support provisions of the decree. We conclude joint physical care is in the best interests of the children and affirm. We additionally conclude the spousal-support award is inequitable and modify the spousal-support provision accordingly.

**I. Background Facts & Proceedings.**

Amber and Andrew were married on August 7, 2009. This action was initiated in July 2014, the trial was held in 2016, and the decree was filed August 31, 2016. The parties have two children: E.P., age nine, and R.P., age six.

Amber was thirty-three years old at the time the dissolution decree was entered. She is employed as a pharmacist for the University of Iowa Hospitals and Clinics, earning $106,892 per year. Andrew was thirty-one years old at the time the decree was entered. Andrew is a part-time student attending classes for engineering at the University of Iowa. Although Andrew has had part-time employment in the past, he was not employed at the time of the trial.

The parties met in 2006 while they were both attending the University of Iowa. However, Andrew withdrew from the university in 2006 due to poor grades. Amber began pharmacy school at the university in the fall of 2006 and became pregnant with E.P. around the same time. Amber and Andrew agreed Andrew would work full-time to support the family while Amber finished pharmacy school and Andrew would return to college after Amber's schooling was

complete. Amber was to graduate from pharmacy school in May 2011, slightly less than two years after the parties were married. Andrew began working nights at a plastics molding factory. Amber also contributed to supporting the family with income from work as a pharmacy intern and by taking the maximum amount of student loans to pay for living expenses as well as her schooling. At the time of trial, Amber owed approximately $230,000 in student-loan debt.

When Amber completed pharmacy school in 2011, Andrew re-enrolled at the University of Iowa as planned. Andrew took classes as a full-time student for the fall 2011, fall 2012, and spring 2013 semesters.[1] However, due to poor academic performance, Andrew withdrew from all classes during the fall 2013 semester, withdrew from all but two classes during the spring 2014 semester, and withdrew from all classes during the summer 2014 semester. Andrew did not inform Amber he was not attending classes as planned. Andrew explained that his poor academic performance was related to his distress due to the marital problems beginning to arise.

The breakdown of the marriage began in 2013 when Amber engaged in inappropriate interactions with men other than Andrew, and Andrew, in turn, sought relationships with other women. Amber and Andrew ultimately separated in June 2014 after a domestic dispute resulted in the police being called and a no-contact order entered between Amber and Andrew. Andrew was charged with domestic abuse assault, but the charge was later dismissed.

---

[1] Andrew did not attend school during the spring 2012 semester because the parties originally planned to move, and Andrew intended to begin schooling at Iowa State University. Once Amber and Andrew decided they would not move after all, it was too late for Andrew to enroll in classes at the University of Iowa. Therefore, he stayed home and cared for the children from January to June 2012.

While the no-contact was in place, Andrew was unable to see the children for approximately five weeks. Once the charge against him and the no-contact order were dismissed, the parties entered into a temporary visitation agreement. The record reveals Amber and Andrew were able to communicate with respect to the children and exchange the children for visitation without discord in most cases. However, the children did repeat negative comments made by Amber about Andrew, and Andrew did call Amber names in front of the children during at least one exchange. Amber was accused of possible abuse of E.P. when faint marks were discovered on E.P.'s face and E.P. reported Amber slapped him as a form of punishment. The department of human services (DHS) conducted a child-abuse assessment, which initially resulted in a "confirmed" report, but the report was amended to "not confirmed" on appeal.

In its dissolution decree, the district court noted both parents have shown poor judgment at times. However, the court determined:

> Despite the normal hard feelings present over the breakup of their relationship, it appears to this court, that with the passage of time and each party addressing their mental-health issues, that the parties can civilly and constructively communicate with each other to the extent necessary for joint physical care to work and for the well-being of their children.

The court held joint physical care is in the best interests of the children. As to Andrew's request for spousal support, the court held that in accord with the parties' understanding that Andrew would work to support Amber throughout her schooling and Amber would, in turn, support Andrew while he completed school, "Andrew is entitled to limited rehabilitative alimony so that he can finish his

schooling." The court awarded Andrew spousal support in the amount of $2000 per month for thirty-six months. Amber now appeals.

**II. Standard of Review.**

"An action for dissolution of marriage is an equitable proceeding and, consequently, this court's review is de novo." *In re Marriage of Thatcher*, 864 N.W.2d 533, 537 (Iowa 2015). "Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003).

**III. Analysis.**

Amber first contends joint physical care is not in the children's best interests.[2] Iowa Code section 598.41(5)(a) (2014) permits the court to award joint physical care upon the request of either parent and requires the court to make "specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interests of the child[ren]" if the court denies the request for joint physical care.

> Physical care issues are not to be resolved upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (emphasis in original). Factors to be considered in determining the children's best interests include:

---

[2] Neither party contests the district court's award of joint legal custody.

> (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (citation omitted).

Upon our thorough review of the record, we agree with the district court that joint physical care is in the children's best interests in this case. Despite both Amber and Andrew's missteps throughout the pendency of this matter, both parties have been actively involved in the child-rearing responsibilities from the time that each child was born. The record reveals both Amber and Andrew are involved in the children's schooling and healthcare. Thus, neither party has a significant advantage under the approximation rule. *See Hansen*, 733 N.W.2d at 697 (explaining the premise of the approximation rule "that the caregiving of parents in the post-divorce world should be in rough proportion to that which predated the dissolution"). It is clear Amber and Andrew both love their children very much and both do all they can to provide happy and healthy lives for the children.

Although there has been not unexpected tension between them, Amber and Andrew have been able to communicate with respect to the children in a civil manner on most occasions. The record indicates Amber and Andrew are capable of working through their differences to carry out a care schedule that is in the best interests of their children.

Additionally, Amber and Andrew live in close proximity to each other and, therefore, a shared physical-care arrangement will not be unduly burdensome and will allow the children to maintain the most stability and continuity of care possible. *See id.* at 696. A joint-physical-care arrangement allowing the children maximum time with each parent is in the children's best interests. *See* Iowa Code § 598.41(1)(a) ("The court, insofar as is reasonable and in the best interest of the child[ren], shall order the custody award, including liberal visitation rights where appropriate, which will assure the child[ren] the opportunity for the maximum continuing physical and emotional contact with both parents . . . ."). We therefore affirm the district court's custody determination and the corresponding child-support award.

Amber also contests the district court's spousal-support award. The court—upon consideration of the parties' agreement that Andrew would work to support the family while Amber completed school, and then Amber would do the same while Andrew completed school—determined Andrew was entitled to rehabilitative support in the amount of $2000 per month for thirty-six months beginning on August 1, 2016.

"Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (citation omitted). Section 598.21A(1) lists the factors to be considered in determining if a spousal-support award is appropriate including, but not limited to: the length of the marriage; the parties' age and physical and emotional health;

the distribution of property; each party's education level; and the earning capacity of the party seeking support. "Although our review of the district court's award of alimony is de novo, we give that court considerable latitude in making this determination based on the criteria in section [598.21A(1)]. We will disturb that determination only when there has been a failure to do equity." *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005).

Amber contends the district court's spousal-support award does not do equity considering the relevant factors including the short duration of the marriage. Amber asserts the spousal support awarded to Andrew will enable him to enjoy a better standard of living than he enjoyed during the marriage. Amber argues the spousal-support award is inequitable considering the equal division of the parties' minimal assets and her requirement to repay a significant amount of student-loan debt—a portion of which was used to pay the parties' living expenses in addition to Andrew's salary. While the parties' mutual agreement concerning Andrew's financial contribution with the expectation of future reciprocation by Amber is a factor to be considered, *see* Iowa Code § 598.21A(1)(h), Amber asserts consideration of all the factors indicates spousal-support is inappropriate in this case.

We agree the court's spousal-support award in this case does not achieve equity. This was a short-term marriage, lasting only six years. Andrew is young, healthy, and will likely have a good earning capacity upon completion of his college education. Although the parties' agreement that Amber would reciprocate the support given to her by Andrew during her time in pharmacy school is clear and undisputed, we also acknowledge Amber has not completed

her education debt-free. Amber owes a significant amount in student-loan debt—$230,000—a portion of which was used to pay family expenses while she was in school. We also note Andrew did not take advantage of much of the opportunity already afforded him by Amber to complete his schooling. Andrew withdrew from classes for three consecutive semesters and then subsequently only attended school part-time for the next year and a half leading up to the dissolution trial. Considering the short duration of the parties' marriage and the substantial student-loan debt Amber incurred paying for both education costs and family expenses, we conclude the spousal-support award is inequitable.

We conclude Andrew is entitled to spousal support in the amount of $1500 per month for twelve months beginning on August 1, 2016. We believe $1500 per month over a period of one year is sufficient monies to cover Andrew's college expenses for about one year. Had Andrew been making reasonable efforts to earn credits in the past, along with this additional year of expenses paid, Andrew could have completed or come reasonably close to completing his degree. The spousal-support provision of the decree is modified accordingly.

**IV. Conclusion.**

We find joint physical care of the parties' children as ordered by the district court is in the children's best interests and therefore affirm. We conclude the spousal-support provision of the decree is inequitable and modify the provision to award Andrew spousal support in the amount of $1500 per month for twelve months beginning August 1, 2016.

**AFFIRMED AS MODIFIED.**