**IN THE COURT OF APPEALS OF IOWA**

No. 17-2002
Filed August 1, 2018

**IN RE THE MARRIAGE OF MICHAEL CLIFFORD ANDERSON
AND ABBY LEA ANDERSON**

**Upon the Petition of
MICHAEL CLIFFORD ANDERSON,**
            Petitioner-Appellee/Cross-Appellant,

**And Concerning
ABBY LEA ANDERSON,**
            Respondent-Appellant/Cross-Appellee.

_____

        Appeal from the Iowa District Court for Story County, John J. Haney, Judge.


        Abby Anderson appeals, and Michael Anderson cross-appeals, from the

decree dissolving their marriage. **AFFIRMED ON BOTH APPEALS.**


        Ryan D. Babich of Babich Goldman, P.C., Des Moines, for appellant.

        Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Michael and Abby Anderson married in 2004, had three children, and divorced in 2017. In pertinent part, the district court (1) granted the parents joint physical care of their children; (2) declined Abby's request for spousal support; and (3) concluded Michael should pay Abby $337.92 per month in child support.

On appeal, Abby contends the district court should have granted her physical care of the children and should have ordered Michael to pay her rehabilitative alimony. On cross-appeal, Michael argues the district court should have imputed income to Abby for purposes of calculating child support.

## I. *Physical Care*

"Physical care" is "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2017). "Joint physical care" is "an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent." *Id.* § 598.1(4); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 690-91 (Iowa 2007).

Abby contends the district court should have granted her physical care of the children because she was "the primary caregiver for most, if not all, of the parties' marriage"; she and Michael had "significant difficulties in communication"; they were "distrust[ful]" and unable "to show mutual respect to one another"; they

were "often in disagreement" on parenting decisions, and "the children [were] not adjusting that well to the shared care arrangement."

The district court addressed these concerns. The court stated, "[D]espite their respective faults and recent posturing for trial, Michael and Abby are good people, good parents, and both love and care a great deal for their children." The court pointed out that the parents lived "within a few blocks of each other," had "strong family support systems in the area," and had "actively cared for the children both before and since their separation." Although Abby was "primary caretaker in recent years," the court found "Michael's role and contributions in this regard [could not] be said to weigh against him." The court further found the parents were able to support each other's relationship with the children and were able to communicate with each other concerning the children. In the court's view, the parents' "increased tensions in preparing for trial" were "temporary and situational" and they would communicate more effectively moving forward.

On our de novo review of the record, we concur in these findings. Michael was a significant part of the children's lives throughout the marriage. He testified that both he and Abby "worked full time for many years" and both attended to the children's daily needs and went to their activities. In his words, he "tried to be the most active and attentive dad that [he] kn[e]w how to be even with working a full-time job." Although Abby testified to providing the lion's share of the children's care before a temporary joint physical care order was filed and she stated Michael spent long hours at work, she agreed Michael actively parented their first child and was involved with the children in other respects.

Notably, Michael's job was restructured, affording him "a lot more flexibility." As noted by the district court, he moved to a townhome "less than two blocks" from the home he had shared with Abby and in which Abby still lived. These changes facilitated a joint physical care arrangement.

We acknowledge the parents' significant difference of opinion on how the children fared under the temporary alternating-week schedule. Michael testified they "responded extremely well" to the schedule, while Abby stated they did not handle it very well. There is no question the children experienced trauma as a result of their parents' separation and divorce. But this is not surprising, given their close relationship with both parents. The alternating-week schedule preserved that relationship. Although Abby advocated for a 2-2-3 day schedule, we agree with Michael that it would have required more transfers between homes and potentially more disruption.

We turn to the most troublesome part of the case—each parent's disparaging comments about the other during trial. Both paid lip service to the importance of supporting the children's relationship with the other. But both parents' trial testimony evinced a callous lack of respect for the other parent. At times during the proceedings, the parents exposed their children to their feelings of scorn. In the end, however, they made the temporary joint physical care arrangement work. They communicated about the children's needs primarily by text, transitioned the children from one home to the other without inordinate disruption, met their daily needs, and facilitated their participation in extracurricular activities. Like the district court, we trust that, in time, they will be able to renew the respect for each other that was lost during the proceedings. *Cf. In re Marriage*

*of Bernard*, No. 09-1676, 2010 WL 2384614, at *5 (Iowa Ct. App. June 16, 2010) ("At the time of trial [the parents] were caught up in what occurred at the end of the marriage. This generated frequently seen resentment, bitterness, and emotional heat. The district court believed that both parties could overcome these problems and support each parent's relationship with their son. We agree, and upon considering all the relevant factors, we affirm the district court's award of joint physical care.").

The parents could take a step towards repairing their frayed relationship by affording each other time with the children during their parenting time, as Abby requests. We acknowledge she would like to formalize this "right of first refusal" and have the decree modified to "specify[] that if either party has to work or is unable to care for the children during their respective parenting time, the parent in need of care for the children shall offer the option to the other parent to care for the children prior to using a third party." *See*, *e.g.*, *In re Marriage of Klemmensen*, No. 14-1292, 2015 WL 2089699, at *4 (Iowa Ct. App. May 6, 2015) (addressing right of first refusal). We believe the parents are fully capable of informally implementing a first-refusal plan without a modification of the decree to incorporate such a provision.[1] *Cf. In re Marriage of Lauritsen*, No. 13-1889, 2014 WL 3511899, at *3 (Iowa Ct. App. July 16, 2014) (upholding a right-of-first-refusal provision where a party denied visitation without good reason).

---

[1] Abby also asks that we modify the decree to include a "joint legal custodian" provision specifying "each party's rights and responsibilities as joint legal custodians." The decree already contains joint custodian language. We see no reason to expand the language.

## II.     *Spousal Support*

Abby requested rehabilitative spousal support of $1000 per month for one year.  *See In re Marriage of Sisson*, 843 N.W.2d 866, 875 (Iowa 2014) (noting the primary goal of rehabilitative alimony is self-sufficiency).  The district court denied the request, reasoning as follows:

> This case presents a medium-term marriage of approximately 13 years.  Having considered all of the relevant factors, including but not limited to: Michael's education and employment history; his financial circumstances; Abby's education and employment history; her financial circumstances; Abby's intention to return to full-time employment; each party's good health; their ages; the medium-term duration of this marriage; their debt, asset and retirement division; the Court concludes that Abby's request for alimony should be denied.

The court characterized Abby's request as one for traditional rather than rehabilitative alimony.  *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) ("The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." (citation omitted)).  Nonetheless, the court's reasoning applies equally to her request for rehabilitative alimony.  *See* Iowa Code § 598.21A(1) (listing factors for consideration in awarding spousal support payments "for a limited or indefinite length").

On our de novo review, we are persuaded by the court's reasoning.  *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005) (characterizing our review as de novo but stating we give the district court "considerable latitude in making [the spousal support] determination based on the [statutory] criteria").  Abby worked full-time during the first six years of the marriage, earning well over Michael's earnings at the time of the dissolution.  Although she took one year off

following the birth of their third child, she worked part-time after that point. Her part-time earnings were a third to a fourth less than her full-time earnings. But her Masters' degree in Meat Science together with her extensive work experience left her well-prepared to rejoin the workforce on a full-time basis. She did not require rehabilitative alimony to become self-sufficient. *See In re Marriage of O'Rourke*, 547 N.W.2d 864, 866-67 (Iowa Ct. App. 1996) (stating rehabilitative spousal support "serves to support an economically dependent spouse through a limited period of education and retraining" and noting spouse's "employment history and substantial earning capacity evidence a self-sufficiency inconsistent with the underlying purpose of rehabilitative alimony").

### III.    *Imputation of Income to Abby*

The district court calculated child support under the guidelines adopted by the Iowa Supreme Court. *See* Iowa Ct. R. 9.2. The court used the parents' actual annual incomes and expressly "decline[d] Michael's invitation to impute income to Abby beyond her current earnings." On cross-appeal, Michael contends the court should have imputed annual income of $50,000 to Abby.

Iowa Court Rule 9.11(4) allows a court to impute income to a parent "in appropriate cases." The rule identifies one appropriate case as a parent's unemployment or underemployment "without just cause." Iowa Ct. R. 9.11(4).

This is not an appropriate case to impute income. The parents agreed Abby would give up her employment for a year and would work part-time until the youngest child entered kindergarten. *Cf. In re Marriage of Rogers*, No. 16-1571, 2017 WL 4842306, at *6 (Iowa Ct. App. Oct. 25, 2017) ("Jessica's reduced income is a direct result of the parties' long-term agreement that she would focus her

energies at home rather than in the workforce."). Abby's actual part-time earnings at the time of trial were approximately forty-three percent less than the earnings Michael sought to impute to her. Under these circumstances, the court acted equitably in using her actual income rather than her earning capacity.

## IV.    *Appellate Attorney Fees*

Abby and Michael seek awards of appellate attorney fees. We decline both parties' requests. An award of appellate attorney fees rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Though Michael earned significantly more than Abby at the time of trial, he was forced to expend additional appellate attorney fees defending the primary issue on appeal, the district court's joint physical care decision. We conclude the parties should be responsible for their own appellate attorney fees.

We affirm the district court's thorough and well-reasoned decree in its entirety. Abby shall be responsible for seventy-five percent and Michael shall be responsible for twenty-five percent of the costs on appeal.

**AFFIRMED ON BOTH APPEALS.**