In re the MARRIAGE OF Miles M.
WEINBERGER and Bernice
K. Weinberger,

Upon the Petition of Miles M.
Weinberger, Appellant,

And Concerning Bernice K.
Weinberger, Appellee.

No. 92–353.

Court of Appeals of Iowa.

Sept. 2, 1993.

Stephen C. Gerard, II of Gerard & Baker, Coralville, until his withdrawal, and then Daniel L. Bray, Iowa City, for appellant.

Sharon A. Mellon of Mellon & Spies, Iowa City, for appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

Mike and Bernice Weinberger were married in July of 1964. Mike filed the present action on March 7, 1990, after twenty-seven years of marriage. At the time of trial, Mike was fifty-three years old, and Bernice was fifty-nine. Bernice earned a bachelor of science degree in nursing in 1961 and a masters in social work in 1963. At the time of their marriage Bernice was employed as a full-time psychiatric social worker at the University of Pittsburgh. Mike was not employed during his last year of medical school and brought considerable educational debt into the marriage.

Upon Mike's graduation from medical school, Bernice quit her job and they moved to San Francisco, where Mike completed his residency training. They then moved to Bethesda, Maryland, where Mike worked for the Public Health Service. Bernice worked as a social worker at Jewish Family & Children's Services for eighteen months. At this time, the couple adopted a three-day-old infant.

Shortly after the adoption, the family moved to Denver, where Mike began training in pediatric allergy and pulmonary medicine. Bernice could not work outside the home due to restrictions imposed by their adoption agency. Mike and Bernice adopted another child, Marc, when their first son, David, was eight months old. Bernice became pregnant five months before they were to leave Denver. Their third child, Sharon, was born in 1972 in California, where Mike had begun his private practice.

Mike became dissatisfied with private practice and ultimately secured a position on the medical faculty at the University of Iowa in 1975. Bernice found employment as a part-time research assistant at the university. She then found employment in the pediatrics department which Mike had created. The couple also adopted another daughter, Kendra, at this time.

Mike currently is a full professor of pediatrics at the university and is also director of the University of Iowa Cystic Fibrosis Center. Mike earns $114,070 per year, plus fringe benefits. In addition, Mike had consulting income of $136,000 in 1990, and $86,000 in 1991. Mike's net income was $11,288 per month. Three of the children are now adults and have completed or are continuing their education to the postgraduate level. All the children have substantial trust funds set up to pay for their education.

Following trial, the district court ordered Mike to pay Bernice $2500 per month in alimony. The district court also ordered Mike to pay for Bernice's health insurance. In addition, the district court ordered Mike to maintain life insurance in order to provide funds to continue alimony payments after his death. Bernice was awarded IRA accounts

valued at $10,000, a $45,000 cash settlement, over $225,000 in TIAA/CREF funds, the marital home, and a car. Mike was awarded his Keogh account valued at $125,045, his bank account of $18,000, his SCI personal account valued at $64,754, over $225,000 in TIAA/CREF funds, a home, and three cars. Mike has appealed.

Mike argues that the district court erred in ordering him to pay $2500 per month alimony. Mike contends that with all of the funds awarded to Bernice, she could earn between $28,500 and $34,500, not including her own income from work. Mike also argues the district court erred in ordering him to pay for Bernice's health insurance in the amount of $160 per month. Mike also insists that Bernice has sufficient funds to last her the rest of her life and that it is excessive to require him to purchase insurance to guarantee alimony payments will continue after his death. Mike finally maintains that the district court erred in considering his consulting income when determining the alimony award.

■ Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the district court, especially in determining the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## I. *Alimony.*

■ Mike first argues the district court erred in determining the amount of alimony awarded to Bernice.

A review of the facts and circumstances of this case indicates an alimony award of $2,500 per month is appropriate.

The parties were married over twenty-seven years. Bernice gave up her career pursuits in nursing and social work in order to support Mike in his medical career and to raise their four children. Throughout their marriage, Bernice was responsible for finding new housing and taking care of the children during each move to a new location. Although she worked outside of the home on

occasion for short periods since the adoption of their first child, her primary and full-time job has been as a mother and homemaker.

At the time of trial Bernice was fifty-nine years old and had some minor health problems. Dr. Jane Anderson, Bernice's psychologist, testified Bernice suffers from cyclical depression. Although Bernice has maintained a current nursing license, her full-time employment opportunities are limited. It is unlikely Bernice will secure employment in her field of training which will guarantee her a lifestyle like the one she has maintained over the past twenty-seven years.

■ Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code § 598.21(3). *See In re Marriage of Hayne*, 334 N.W.2d 347, 350 (Iowa App. 1983).

■ When considering an award of alimony, the court must consider the earning capacity of the parties, their present standard of living, and the ability of the one to pay balanced against the relative needs of the other. *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (1983) (citation omitted). In marriages of long duration where the earning disparity between the parties is great, both alimony and nearly equal property division may be appropriate. *In re Marriage of Friedman*, 466 N.W.2d 689, 693 (Iowa 1991). We affirm the district court's decision in this respect.

■ Mike also contends the district court erred when it included his income from consulting in its determination of alimony.

The income earned from consulting has been of a substantial amount each year for the past six years. The amounts earned from 1986 through 1991 are as follows: 1986–$53,342; 1987–$56,974; 1988–$27,806; 1989–$47,850; 1990–$136,031; and through the first ten months of 1991 he earned $86,000. This income enhanced the family's standard of living.

736

The income from Mike's consulting work was properly considered in determining alimony. *Cf. In re Marriage of Elbert*, 492 N.W.2d 733, 735 (Iowa App.1992) (when overtime income is consistent over past five years it is considered income for determining spousal support). However, should Mike's consulting income change substantially, he may seek a modification of the parties' dissolution decree. *See* Iowa Code § 598.21(8)(a) (1991). We affirm the district court's alimony award.

## II. *Health and Life Insurance.*

Mike also challenges the district court's order requiring him to maintain health insurance for Bernice and to maintain life insurance to guarantee that payments continue after his death until the time of Bernice's death.

Bernice is fifty-nine years old and without full-time employment. She is not in a position where health insurance is readily available. The district court limited her coverage to the next three years, until she reaches age sixty-two. We do not find this inequitable and affirm the district court's decision.

We disagree, however, with the district court's order that Mike maintain life insurance to guarantee alimony payments after his death. The general rule followed in Iowa is that alimony payments are presumed to terminate at the death of the payor. *In re Roberts' Estate*, 257 Iowa 1, 4, 131 N.W.2d 458, 460 (1964); *In re Estate of Jones*, 434 N.W.2d 130, 131 (Iowa App.1988). We recognize that Iowa Code section 598.21(3) (1989) is broad enough to permit alimony payments after death. *In re Marriage of Debler*, 459 N.W.2d 267, 270 (Iowa 1990). However, alimony is not an absolute right; the award depends upon the circumstances of each particular case. *Fleener*, 247 N.W.2d at 220. The court's discretionary award of alimony is made after considering the factors listed in Iowa Code section 598.21(3). *See Hayne*, 334 N.W.2d at 351–52. We find, after considering those factors, especially the ages of the parties and the amount of property awarded to Bernice, that it would be inequitable to require Mike to continue paying alimony after his death. *See Id.* Therefore, we modify the district court's order so that Mike is not required to pledge any of his life insurance to an alimony trust to guarantee alimony payments to Bernice after his death.

## III. *Attorney Fees.*

Bernice requests appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial position. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the party to pay, and whether the party making the request was obligated to defend itself on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). We order Mike to pay $2,000.00 towards Bernice's appellate attorney fees obligation. Costs of this action are assessed to Mike.

### AFFIRMED AS MODIFIED.