**IN THE COURT OF APPEALS OF IOWA**

No. 13-1236
Filed August 27, 2014

**IN RE THE MARRIAGE OF SANDI K. MEURER**
**AND CHARLES H. MEURER**

**Upon the Petition of**
**SANDI K. MEURER,**
        Petitioner-Appellee,

**And Concerning**
**CHARLES H. MEURER,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Nancy S. Tabor,

Judge.


        Respondent appeals the economic provisions of a decree of dissolution of

marriage.  **AFFIRMED AS MODIFIED.**


        Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for

appellant.

        Maria Waterman and Melinda Eshbaugh, Davenport, for appellee.


        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.  Tabor, J.,

takes no part.

**MCDONALD, J.**

Charles Meurer appeals the decree dissolving the marriage between him and his former spouse Sandi Meurer.  On appeal, Charles argues the district court improperly included as marital property and divided two separate inheritances he received during the course of the marriage.  He also challenges the district court's award of spousal support and attorney's fees.

I.

We review dissolution of marriage proceedings de novo.  *See* Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and decide anew the issues properly preserved and presented for appellate review.  *See id.*  While we give weight to the findings of the district court, those findings are not binding.  *See* Iowa R. App. P. 6.904(3)(g); *McDermott*, 827 N.W.2d at 676.  We afford the trial court considerable latitude in determining spousal support awards.  *See In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996).  We will disturb the district court's ruling only where there has been a failure to do equity.  *Id.*  We review an award of attorney fees for an abuse of discretion.  *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

II.

A.

"Upon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties . . . ."  Iowa Code

§ 598.21(1) (2011). As a general rule, the court shall divide all property of the parties equitably between the parties. *See* Iowa Code § 598.21(5). However,

> [p]roperty inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division . . . except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Iowa Code § 598.21(6). This provision "does not demand that property acquired by gift or inheritance must always be set aside to the donee and omitted altogether from consideration in the division of property. To avoid injustice property inherited by or given to one party may be divided." *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 659 (Iowa 1989).

We look at several factors in determining whether inherited or gifted property should be divided. "The intent of the donor and the circumstances surrounding the inheritance control whether the inheritance is to be set off in the dissolution." *In re Marriage of Higgins*, 507 N.W.2d 725, 727 (Iowa Ct. App. 1993). We also consider:

> (1) contributions of the parties toward the property, its care, preservation or improvements;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*Muelhaupt*, 439 N.W.2d at 659. The length of the marriage is also an "important factor." *See In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa Ct. App. 1992).

There are two inheritances at issue in this proceeding.  The first: in 1993, Charles inherited $178,000 from his uncle Herbert Frick.  The district court found the Frick inheritance should not be excluded from the property division, which Charles contends was improper.   After considering all relevant factors, we conclude it would be inequitable to exclude the Frick inheritance from the marital property subject to division.

From the time of its receipt, the Frick inheritance was comingled with assets Charles and Sandi had accumulated as a couple.  A portion of the inheritance was used to satisfy the couple's mortgage.  Charles testified the remaining money was not segregated because "our marriage was rock solid.  I never anticipated that we would ever divorce."  Other than payment on the mortgage, neither party could trace the use of the Frick inheritance.  The fact the inheritance was used as marital property to provide for Charles, Sandi, and their children for an extended period of time without segregation of the funds would render any other disposition inequitable:

> Our obligation to respect and give effect to the wishes of those who convey gifts and bequeath inheritances demands of us that those wishes not be rendered nugatory by the mere fact that the intended recipient happens to be married.
> On the other hand, as time goes on, the benefits of such property are enjoyed by the married couple; it is both natural and proper for the expectations of the other spouse to rise accordingly. A sudden substantial rise in the couple's standard of living made possible by a gift or inheritance to the husband or the wife will naturally and reasonably lead the other spouse to anticipate that that standard of living will be maintained, particularly if it is sustained over a lengthy period of time.  Changes in habit, in dress, in associates and friends, in manners, in leisure activities, in work or study aspirations—in short, in one's entire life-style—can be brought about by significant improvements in one's access to substantial financial resources.  With time such changes become

> ever more deeply ingrained, and eventually it becomes virtually impossible to return to a world long since renounced and forgotten.

*In re Marriage of Wallace*, 315 N.W.2d 827, 831 (Iowa Ct. App. 1981); *see In re Marriage of Goodwin*, 606 N.W.2d 315, 320 (Iowa 2000) (stating "where the parties have enjoyed, over a lengthy period of time, a substantial rise in their standard of living as the result of gifts or inheritances, then any division of property should enable the parties to continue that lifestyle, even if that goal requires the division of gifted property").

The second inheritance: one year prior to the parties' dissolution trial, Charles inherited approximately $282,000 from his stepmother Eda. The inheritance was comprised of cash and 2000 shares of Exxon stock. Initially, Charles held the inheritance in Charles' and Sandi's joint brokerage account, but Charles almost immediately transferred the stock to his individual brokerage account. The trial court awarded the Exxon stock to Charles without division as inherited property. However, the trial court determined the cash portion of the inheritance, plus interest and dividends earned on the inheritance, should be considered marital property and divided equally between the parties. Sandy does not cross-appeal the award of Exxon stock to Charles. Charles contends the district court erred in concluding the cash portion of the inheritance was marital property subject to division. We agree with this contention.

Unlike the Frick inheritance, the inheritance from Eda was received shortly prior to the dissolution of the parties' marriage. While it is true the inheritance was temporarily held in a joint account, Charles quickly transferred the inheritance from that account. Thus, unlike the Frick inheritance, the funds were

not comingled and used to support the standard of living of the family. Nonetheless, Sandi contends it was proper to divide the cash component of the inheritance because she had a close relationship with Eda. There is no doubt that Sandi enjoyed a close relationship with Eda and Charles a poor one. After Charles' dad died and left his money to Eda, Eda changed the executor of her will. According to Sandi, Charles "fully expected that he was not going to inherit anything. He thought for sure that she had changed the will and he was out." Sandi believes if she had told Eda she was leaving Charles, Eda would have changed her will to leave the money to Sandi instead of Charles. That is simply speculation. Like the district court, we find and conclude Eda devised the stock and cash to Charles, despite their poor relationship, to honor Charles' father's wishes. The Exxon stock and cash was earned by Charles' father, and it was his desire it be passed to his children.

While the district court found the cash portion of the inheritance was comingled with other assets and not traceable, that is inconsistent with Charles' testimony that all of the funds in brokerage account ***9199 were solely from the inheritance. The district court's conclusion the funds were comingled and not traceable is also inconsistent with the property division in the decree. The decree specifically identifies the cash portion of the inheritance plus accumulated interest or dividends as $107,549.40 and equally divides the same, $53,774.70 to each party. Although neither party did exemplary work in providing documentation regarding their financial accounts, on de novo review, we are able to conclude all of the funds in brokerage account ***9199 derived solely from the

inheritance. Accordingly, the decree is modified to award Charles an additional $53,774.70, which represents the remainder of the inheritance improperly awarded to Sandi.

B.

Spousal support is a stipend paid to a former spouse in lieu of the legal obligation to provide financial assistance. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). A party does not enjoy an absolute right to spousal support after dissolution of the marriage. *See* Iowa Code 598.21A(1) (providing that "the court may grant an order requiring support payments to either party"); *Anliker*, 694 N.W.2d at 540. The criteria for determining the entitlement to, and the amount of support, if any, include, but is not limited to, the length of the marriage, the age and health of the parties, the property distribution, the parties' educational level, the earning capacity of the party seeking support, the feasibility of that party becoming self-supporting at a standard of living comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal. *Id.*

The determination of the need for spousal support and the amount of any such support cannot be reduced to a mathematical formula; the facts and circumstances of each case are too varied for the support determination to be reduced to a table or grid. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the determination of the amount of such support is based on the unique facts and circumstances of each case). Instead, the court must equitably

balance the spouses' respective prospective needs and means viewed in the light of the standard of living they enjoyed while married. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993) (stating "the ability of the one spouse to pay should be balanced against the needs of the other spouse"); *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983) (stating a party is entitled to receive support only in an amount sufficient to maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living). "A trial court has considerable latitude when making an award of spousal support." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). "Therefore, we will only disturb the trial court's award of spousal support if it fails to do equity between the parties." *Id.*

The district court awarded Sandi spousal support in the amount of $3000 per month until she turns sixty-two or first becomes eligible for social security, at which point the amount of alimony would be reduced to $2500 per month. On de novo review, considering all of the relevant factors, we conclude the spousal support award does not do equity between the parties. Sandi and Charles had been married for over thirty-four years. At the time of the decree, Charles was sixty-three years old and in good health. Charles is employed as a chemical engineer, earning approximately $110,000 per year in addition to bonus opportunity. Sandi was fifty-five years old and suffers from a myriad of health conditions, some resulting in lifting and twisting work restrictions that will one day require further surgery. Although Sandi has a postsecondary education, the

parties agreed she would remain at home as the primary caretaker of the parties' now adult children. While she has a license as a certified nail technician, she has not been successful in making that a profitable business endeavor. Sandi currently works at PetSmart making approximately $569 per month.

We conclude the award of spousal support should be reduced to $2000 per month until Sandi deceases or remarries or Charles deceases, whichever occurs first. Relevant considerations supporting this modification include Charles' decreased future income as he approaches retirement age. In addition, Sandi will receive a substantial property settlement of approximately $635,445.04. The property settlement combined with the adjusted alimony award will place her in the position of enjoying approximately the same standard of living she enjoyed prior to the dissolution of the parties' marriage without denying Charles the same opportunity.

We address an additional concern. Charles requests the decree make clear his alimony obligations terminate at his death. Sandi requests the alimony obligation extend beyond Charles' life, if necessary, due to her limited income and future needs. "The general rule followed in Iowa is that alimony payments are presumed to terminate at the death of the payor." *In re Marriage of Weinberger,* 507 N.W.2d 733, 736 (Iowa Ct. App. 1993). However, section 598.21A "is broad enough to permit alimony payments after death." *Id.; see* Iowa Code § 598.21A(1) (providing "the court may grant an order requiring support payments to either party for a limited or indefinite length of time"). After considering the ages of the parties and the amount of property awarded to Sandi,

we conclude it would be equitable for Charles' alimony obligation to terminate upon death and not pass to his estate but to require Charles to purchase and maintain an insurance policy insuring his life with a death benefit of at least $100,000 naming Sandi as beneficiary until such time as his obligation to pay alimony terminates. *See, e.g., In re Marriage of Bonnichsen*, No. 13-0436, 2014 WL 251905, at *3 (Iowa Ct. App. Jan. 23, 2014) (affirming alimony award and life insurance requirement).

C.

Charles challenges the district court's award of attorney's fees to Sandi. "An award of attorney fees rests in the sound discretion of the [district] court and will not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, and any fees awarded must be fair and reasonable. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Here, we cannot conclude the district court abused its discretion in awarding fees.

With respect to appellate costs, "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." Iowa R. App. P. 6.1207. Appellate fees and costs do not include appellate attorney fees. We direct that each party be responsible for their own costs. *See Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 696-97 (Iowa 2010) (affirming it is an "abuse of discretion to divide costs equally between the parties

when one party was fully successful on appeal"). Likewise, we direct that each party be responsible for their own appellate attorney fees.

## III.

For the foregoing reasons, the decree of dissolution of marriage is affirmed as modified. Specifically, the inheritance Charles received from Eda should not be considered marital property and is excluded from division. This results in Charles receiving additional cash property from account ending ***9199 in the amount of $53,774.70. Charles shall pay to Sandi spousal support in the amount of $2000 per month until Sandi deceases or remarries or Charles deceases. Further, Charles shall purchase and maintain an insurance policy insuring his life with a death benefit of at least $100,000 naming Sandi as beneficiary until such time as his obligation to pay alimony terminates.

**AFFIRMED AS MODIFIED.**