# IN THE COURT OF APPEALS OF IOWA

No. 22-0011
Filed March 29, 2023

IN RE THE MARRIAGE OF CASSONDRA ANNETTE STRICKLER
AND ROBIN DEAN STRICKLER

Upon the Petition of
CASSONDRA ANNETTE STRICKLER,
    Petitioner-Appellee,

And Concerning
ROBIN DEAN STRICKLER,
    Respondent-Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


    Respondent appeals from the spousal support provisions of the decree

dissolving the parties' marriage. **AFFIRMED AS MODIFIED**.


    Benjamin R. Merrill and Jackson G. O'Brien of Brown, Winick, Graves,

Gross & Baskerville, P.L.C., Des Moines, for appellant.

    Alexandra M. Nelissen of Advocate Law, PLLC, Clive, for appellee.


    Considered by Bower, C.J., Tabor, J., and Carr, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**CARR, Senior Judge.**

**I.      Background Facts**

Cassondra (Cassie) A. Strickler and Robin (Rob) D. Strickler were married on April 13, 1997.  They have two adult children and one minor child who will graduate from high school in 2023.  The couple lived together in the same home for nearly twenty years.  The couple's marriage eventually deteriorated, and Rob moved out of the home in February 2019.  Their marriage lasted twenty-two years through the date of separation (twenty-four years through the date of trial).

Rob currently works for the Iowa Department of Transportation (DOT).  His highest level of education is a high school diploma.  For most of the couple's marriage, Rob worked jobs that paid around $35-40,000 per year.  He started at the DOT as a maintenance worker and worked his way up to an advertising management position that is usually reserved for people with a four-year degree.  He now makes approximately $75,608 per year.  Rob still maintains his two youngest children on his health insurance and pays more in child support for his minor child than required by the guidelines.  He currently resides with his girlfriend and his brother in his brother's two-bedroom home.  He pays rent to his brother.  He is in good health.  He was forty-six years old on the date of trial.

Cassie currently works as a family support specialist for a nonprofit organization.  She has a high school diploma and obtained her associate's degree in 2009.  Her associate's degree was paid for with scholarships.  Cassie ran a daycare out of the couple's home for seventeen years.  Her net daycare earnings usually ranged from $35-40,000 per year.  The most she ever earned in one year was $49,000.

Cassie quit the home daycare business in 2016 to pursue a bachelor's degree in human services. Her bachelor's degree was paid for with a $45,000 student loan. She worked part-time while pursuing her degree. The district court found her career change was not motivated by a desire to reduce her earnings. By the time of trial, her salary was $40,000 per year. She testified that she is looking for a better paying job, and she would like to work for the Iowa Department of Health and Human Services. Cassie still resides in the marital home. She has sole legal custody and physical care of the couple's minor child. Cassie is in good health. She was forty-eight years old on the date of trial.

## II.  District Court Ruling

Cassie initiated this case by filing a petition for dissolution on May 10, 2019. A bench trial was held in this matter on September 16, 2021. Cassie initially requested $1500 per month in spousal support until she reaches age sixty-seven. Rob, on the other hand, requested the award to be set at $463.06 per month for five years. He used a "formula" he stated was from *In re Marriage of Gust* to calculate this amount.[1]  *See* 858 N.W.2d at 412. Based on this "formula," Rob used his actual yearly earnings but used $50,000 for Cassie's yearly earnings.[2] He then reduced each amount by thirty percent and multiplied the difference

---

[1] The basis for this "formula" appears to be the court's statement: "We have, however, approved spousal support where it amounts to approximately thirty-one percent of the difference in annual income between spouses." *In re Marriage of Gust*, 858 N.W.2d 402, 412 (Iowa 2015).

[2] Rob agreed his income is $75,608 annually but requested the court impute income to Cassie in the amount of $50,000 annually based on her earlier career as a home daycare provider.

between their "net" earnings by thirty-one percent to arrive at his requested amount of $463.06 per month.

At trial, Cassie agreed to Rob's "formula" but instead used what she took to be her gross annual earnings of $31,388. She also did not reduce the respective earnings amounts by thirty percent like Rob did. She proposed she receive $1500 per month for the first five years, and after that the amount would be reduced to $1144.93 (based on her calculation using Rob's "formula") until she reaches age sixty-seven, remarries, or dies.

The district court found that Rob did not establish additional income should be imputed to Cassie for spousal support purposes. The court also found that the decision to stop the daycare operation in 2016 was mutual.[3] The court accepted Cassie's calculation, finding that for the purposes of determining spousal support, Rob earns $75,608 in annual gross wages, and Cassie earns $31,288 in annual gross wages. The court noted that the parties' financial statements were not reliable, because they both projected more in expenses than they had in income. Ultimately, the district court ordered Rob to pay Cassie $1000 per month until his child support obligation ends, then $1145 per month until Cassie reaches age sixty-seven, remarries, or dies. The court found this amount of spousal support equitable, given the stated income disparity between the parties.

Rob now appeals the amount and duration of the spousal support award. He argues that "the District Court failed to do equity by setting spousal support at an amount and duration that disproportionately favors [Cassie's] ability to move on

---

[3] Rob disputes this finding.

from this marriage to Rob's detriment." Rob requests that this Court "modify the current spousal support award and reduce the support to $463.08 for five years."

## III. Principles Used to Set Spousal Support

"[Spousal support] is not an absolute right; an award depends upon the circumstances of each particular case." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). In recent decades, Iowa courts have recognized three types of spousal support: rehabilitative, reimbursement, and traditional. *See In re Marriage of Francis*, 442 N.W.2d 59, 63-64 (Iowa 1989); *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). More recently, our supreme court has also recognized a fourth type, transitional spousal support. *See In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023); *In re Marriage of Pazhoor*, 971 N.W.2d 530, 542-45 (Iowa 2022). The amount of spousal support awarded and its duration differ according to the purposes it is designed to serve. *See Francis*, 442 N.W.2d at 63-64. The categories of spousal support are not mutually exclusive, and courts may order "hybrid awards 'to accomplish more than one of the foregoing goals.'" *Sokol*, 985 N.W.2d at 186 (quoting *Pazhoor*, 971 N.W.2d at 539). Courts are not free to award spousal support outside the recognized categories. *Id.* Traditional spousal support is typically awarded where there has been a long-term marriage and there is a substantial disparity in the parties' incomes. *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993). "Where there is a substantial disparity, we do not employ a mathematical formula to determine the amount of spousal support." *Gust*, 858 N.W.2d at 411-12.

"When determining the appropriateness of spousal support, the court must consider (1) the earning capacity of each party, and (2) their present standards of

living and ability to pay balanced against their relative needs." *In re Marriage of Williams*, 449 N.W.2d 878, 883 (Iowa Ct. App. 1989). In determining need, we focus on the earning capability of the spouses, not necessarily on actual income. *Gust*, 858 N.W.2d at 411. Additionally,

> The equitable principles that we have recognized and enforced in the past require, in dissolution cases, that the spouse with the lesser earning capacity is entitled to be supported, for a reasonable time, in a manner as closely resembling the standards existing during the marriage as possible, to the extent that that is possible without destroying the right of the party providing the income to enjoy at least a comparable standard of living as well.

*In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983).

"The legislature has not authorized Iowa courts to employ any fixed or mathematical formula in applying spousal support." *In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016). Instead, Iowa Code section 598.21A(1) (2019) outlines the relevant factors courts must consider in equitably awarding spousal support:

> Upon every judgment of annulment, dissolution, or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that

enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

## IV.    Analysis.

Both parties are in good health and able to pursue full-time work, each with a consistent track record of earnings. They are each in middle age with the ability, and probable need, to work twenty more years before retirement. Their education levels vary. Each entered the marriage with a high school diploma. That remains Rob's highest level of education. Cassie earned her college decree during the marriage. Part of her education was paid from scholarships, but her last two years of college were funded with loans. Meanwhile, Rob's pay was devoted to supporting the family, as Cassie quit her daycare and took part-time work from 2016 to 2019 to be able to devote more time to her classwork. To this extent, Rob contributed to her education during the marriage. We note, however, that Cassie agreed to accept responsibility for her student debt of $45,000. The parties' property division provides for a nearly equal division of their assets, including a division of Rob's retirement account.

This marriage crossed the twenty-year threshold for consideration of traditional spousal support mentioned in *Gust*, 858 N.W.2d at 411. The current incomes of the parties vary substantially, with Rob earning almost twice the salary of Cassie. The parties agreed that some form of spousal support was due. They

disagreed about its duration and amount. These two factors, duration and earning disparity, suggest consideration of traditional spousal support.

The important factor, balancing Cassie's need against Rob's ability to pay, was made difficult by the parties' statements of expenses, which the trial court found unreliable, as each projected more expenses than income. Our review of the statements leads to the same conclusion.

It appears that Rob, at the present stage of his career, has reached the probable maximum extent of his earnings and earning capacity. He is presently in a job position usually reserved for workers with a four-year college degree. He is to be commended for reaching this level, but we question whether significant further advancement is in his future.

Cassie presents a different picture. She very recently secured her degree in social work and has just begun a new career path. She has the tools for advancement in this work, her degree, but advancement will require time for her to form the relationships, or networking, with others in her field necessary to attain her potential. She testified there have already been other jobs that might pay more but she remained with her current nonprofit employer because she likes the work there and its flexibility. The youngest of the parties' three children will graduate from high school in 2023. This will eliminate any need for Cassie to devote time to caring for a child at home. She would very much like to work at the Iowa Department of Health and Human Services. The parties' earning capacities are more equal than their present earnings. As such, Cassie's situation also suggests some of the elements of rehabilitative spousal support. "[R]ehabilitative spousal support addresses training, education, work-readiness, and human capital

development." *Sokol*, 985 N.W.2d at 187. Cassie has the education but not on-the-job experience, and she needs time to develop the professional relationships, the human capital, necessary for her new career to develop to the goal of self-sufficiency.

On one point we disagree with the trial court and the parties. Cassie, without objection from Rob, reported her gross earnings as $31,288. The parties used this figure in computing their spousal support recommendations. The trial court in its own analysis accepted this figure. Cassie's recent pay stub in the record shows her net monthly income as $2607 but her gross monthly income as $3333.33. This produces gross annual income of $40,000. Under the trial court's method of reasoning, this would have inflated the final spousal support award by $300 per month.

Cassie is in need of spousal support while she pursues her new career. Rob has the ability to pay spousal support as she does so. If given a chance to pursue this new line of work, she can become self-supporting at a level commensurate with that enjoyed by her during their marriage. She needs a hybrid award of traditional and rehabilitative support for this purpose. A reasonable period of time to attain this goal is eight years. We modify the spousal support award to the monthly sum of $850 for ninety-six months following the date of entry of the decree of dissolution of marriage.

With this decided, we consider events that will terminate the support obligation ahead of its expiration. Cassie will need support irrespective of Rob's death, but her need will end upon her own death or remarriage. The spousal support ordered will terminate upon Cassie's death or remarriage, but not upon

Rob's death. *See In re Marriage of Weinberger*, 507 N.W.2d 733, 736 (Iowa Ct. App. 1993) (noting section 598.21(3) (1989), now section 598.21A, is broad enough to permit spousal support payments to continue after death).

**AFFIRMED AS MODIFIED.**