# IN THE COURT OF APPEALS OF IOWA

No. 22-0657
Filed September 13, 2023

IN RE THE MARRIAGE OF TODD ALLEX McCREEDY
AND THERESA RENE McCREEDY

Upon the Petition of
**TODD ALLEX McCREEDY,**
 Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**THERESA RENE McCREEDY,**
 Respondent-Appellant/Cross-Appellee.
_____

 Appeal from the Iowa District Court for Jefferson County, Shawn Showers, Judge.

 A wife and husband appeal the economic provisions of the decree dissolving their marriage. **AFFIRMED AS MODIFIED.**

 Cynthia D. Hucks of Box and Box Attorneys at Law, Ottumwa, for appellant.

 R.E. Breckenridge of Breckenridge Law, PC, Ottumwa, for appellee.

 Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

According to the district court, Todd and Theresa McCreedy approached the dissolution of their thirty-two-year marriage with a shared philosophy of, "what's mine is mine and what's yours is mine." That philosophy continues on Theresa's appeal, and Todd's cross-appeal, from the economic provisions of the decree dissolving their marriage. We affirm as modified.

## I.     Background Facts and Proceedings

Todd and Theresa McCreedy were married in 1989. They have three children, only one of whom was still a minor when they divorced in 2022. Todd, who was fifty-seven years old at the time of trial, is employed as an engineering technician earning $46,543.29 per year. He is in good health as compared to then-fifty-four-year-old Theresa, who was diagnosed with cancer and other conditions during the marriage. Theresa is a self-employed cosmetologist, who has owned her own hair salon for the past twelve years. She claimed to make little from this business although, during the marriage, she was responsible for paying the mortgages, taxes, insurance, and utilities for the parties' home.

That home was built by the couple on four acres that Todd's parents gifted to them in 1995. They received another six acres from Todd's parents in 1999. These ten acres are in the corner of what had been an eighty-acre parcel owned by Todd's parents.

In 2016, before the parties separated, Theresa received an inheritance of roughly $114,000 from her grandfather. She used the funds to buy a condo in Branson for $107,700. Theresa deposited the remaining $7000 in a Mainstay

investment account, which had increased to $17,842 by the dissolution trial six years later.

Todd petitioned for divorce in March 2020. Theresa moved out of the marital home in September and into a rental that costs her $600 per month. She took two vehicles with her when she left—a 2008 Chrysler Sebring and a 2014 Jeep Wrangler, both of which she thought were paid off. But Todd, who handled vehicle expenses during the parties' marriage, had taken out loans on them without telling Theresa. He stopped paying the loans when she moved out, resulting in both vehicles being repossessed in December. Todd "recovered [the Sebring] from the repo lot and started paying the loan on it again." And after a temporary order was entered in December, he resumed payments on the Jeep loan, although the Jeep itself remained at an auction lot because Theresa would not consent to its sale by the bank.

Before the dissolution trial in March 2022, the parties agreed to joint legal custody and joint physical care of their daughter, who was seventeen years old at the time. They did not agree on much else, asking the court to resolve child support, the division of their property and debts, Theresa's request for spousal support, and payment of attorney fees.

Following the trial, the court entered a decree ordering Todd to pay $100 per month in child support. In doing so, the court found Theresa's credibility "to be lacking on . . . her income," which it set at $25,045.71 based on what she reported in a loan application from 2006. Turning next to the parties' property, the court found the marital home and its surrounding six acres should be included in the marital estate. The court valued the home at $357,600, the four acres the home

sat on at $48,700, and the adjacent six acres at $36,000, awarding them all to Todd. The court awarded the Branson condo to Theresa, but included its appreciated value of $143,000 in the marital estate. The court did not do the same for the Mainstay account, the full value of which it set aside to Theresa. As for Theresa's business, the court adopted Todd's valuation of $27,544 and awarded it to Theresa. Todd's retirement accounts were divided equally between the parties, while Theresa received the full balance of an IRA in her name. The court awarded most of the parties' vehicles and equipment to Todd, including the Sebring, valued at $3000, and its debt of $2534. He was also ordered to pay the loan on the Jeep, which was $2581, although Theresa was awarded that vehicle and ordered to pay the $8138 in storage fees that had accumulated since its repossession. Most of the parties' other debts were assigned to Todd.

In the end, Todd received a net award of $483,368.50, while Theresa received $351,183.50, for a difference of $132,179. Rather than ordering Todd to make an equalization payment to Theresa, the court awarded her traditional spousal support of $500 per month until she "is eligible for Medicare, either party's death, or until [her] remarriage." The court reasoned such an award was appropriate "[b]ased on the length of the marriage, Todd's higher net worth, and access to quality health care." While it found "an equalization payment would be inequitable," the court noted that its spousal support award was about equal to

what a property settlement to Theresa would be.[1]  Finally, Todd was ordered to pay $7500 of Theresa's attorney fees.

Theresa appeals, claiming the court erred in (1) calculating her income for child support; (2) its division and valuation of the marital home; (3) including the appreciation of the Branson condo in the marital estate; (4) adopting Todd's valuation of her business; (5) requiring her to pay the storage fees for the Jeep; and (6) not awarding her an equalization payment in addition to traditional spousal support.  Todd cross-appeals, challenging the court's decision to (1) separately value the land on which the marital home sits and (2) not include the appreciation of the Mainstay account in the marital estate.

## II.     Standard of Review

We review dissolution proceedings de novo, *see* Iowa R. App. P. 6.907, keeping in mind that "[t]here are no hard and fast rules governing the economic provisions in a dissolution action."  *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).  Instead, "each decision depends upon the unique circumstances and facts relevant to each issue."  *Id.*

## III.    Analysis

### A.     Child Support

Theresa claims the district court's "calculation of child support was not supported by the facts and the weight of the evidence."  She argues the court should have determined her income by averaging what she reported on her income

---

[1] The court calculated that there were 128 months until Theresa turned sixty-five and became eligible for Medicare, which multiplied by $500 per month equaled $64,000.

tax returns from 2017 through 2020, rather than tying it to what she reported on a loan application from 2006.[2]

Income tax returns are generally the best evidence of income when calculating child support. *In re Marriage of Hansen*, 886 N.W.2d 868, 876 (Iowa Ct. App. 2016). Yet the determination of "gross monthly income" under the child support guidelines "may not necessarily equate to a party's adjusted net income on their tax return." *Id.* The district court determined that was the case here, finding, "Theresa was clearly bringing home more income than [the] $5,000 per year in profits which was being reported to the Department of Revenue and IRS."[3] We agree. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007) (stating we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses, though we are not bound by them).

While the court did tie Theresa's income to a 2006 loan application, other evidence supported that amount, including a handwritten note by Theresa detailing her annual "take home" from the business: $23,558.44 in 2018, $22,026.40 in 2019, $15,376.05 in 2020, and $18,870.10 in 2021. *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991) ("The court must determine the parent's current monthly income from the most reliable evidence presented."). Theresa also testified that she supplemented her business with occasional cleaning jobs and

---

[2] We note that Theresa has cited no authority in support of this issue in the argument section of her appellate brief. While we could find the issue waived, *see* Iowa R. App. P. 6.903(3)(g), we choose to address her income because it has some bearing on her property-division claims. *See* Iowa Code § 598.21(5)(f) (2020).

[3] The parties' joint income tax returns showed that Theresa's business operated at a net income of $1002 in 2017, $5578 in 2018, $5068 in 2019, and a loss of $2693 in 2020.

rental income from the condo. And, as Todd pointed out at trial, if Theresa's income was really as low as she reported on their income tax returns, she would not have been able to afford the roughly $2000 per month in home-related expenses that she paid throughout the marriage. With these facts, we conclude the record supported the court's determination of Theresa's income. *See In re Marriage of Claar*, No. 05-0174, 2006 WL 334219, at *3 (Iowa Ct. App. Feb. 15, 2006) (finding that the adjusted gross incomes from the parties' tax returns were "of little value in calculating child support" because of deductions, omissions of cash and barter payments, and the parties' ability to support a comfortable lifestyle).

## B. Property Division

We start our review of the district court's property division with some familiar principles. Iowa is an equitable distribution state, meaning "our courts equitably divide all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). In making this equitable distribution, we are guided by the factors listed in Iowa Code section 598.21(5). *Id.* "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* (citation omitted).

### 1. Marital home and land

Theresa first claims the "total value of th[e] real estate" gifted to the couple by Todd's parents "should be treated as marital property." That is exactly what the court did, as shown by its balance sheet that included the home, its surrounding four acres, and the adjacent six-acre parcel on Todd's side. Theresa's real

complaint seems to be the value the court placed on the home, arguing that her appraisal of $385,000 was more credible than Todd's appraisal of $330,220. The court "split[] the difference" between these appraisals and valued the marital home at $357,600. Because this valuation was within the range of evidence, we will not disturb it on appeal. *See id.* at 194.

We do, however, agree with Todd on his cross-appeal that an adjustment is needed for the court's separate valuation of the four acres on which the house sits. As Todd points out, both parties' appraisals included the value of the land in their valuation of the marital home. So there was no need for the court to separately value that land at $48,700. We accordingly modify the dissolution decree to remove that amount from the property division.

*2.      Branson condo*

Unlike the marital home and surrounding land, the court set aside the $107,000 purchase price of the Branson condo to Theresa as her separate property, but included its appreciation of $143,000 in the division, meaning the court valued the condo at $250,000. Theresa challenges this valuation and the court's inclusion of the appreciation in the property division. She argues "[t]here is absolutely no information in the record that indicates any increase in value for the condo had anything to do with the efforts of the parties."

Starting with the court's valuation, Todd presented a printout from a real estate website as an exhibit, showing similarly aged condos in an adjacent building were listed for sale between $265,000 to $279,900. Theresa, on the other hand, seemed to argue the condo had not appreciated in value at all because it was in mostly the same condition as when it was purchased for $107,000. We again find

the court's valuation was within the range of evidence presented, especially considering its finding that Theresa was not credible on financial issues. *See id.* ("[A]ppellate courts defer to a trial court's valuations when accompanied by supporting credibility findings or corroborating evidence.").

As for the inclusion of the appreciated value of the condo in the division, when a spouse receives a cash inheritance and uses it to buy property, the appreciation in value "may be characterized as marital property" barring special circumstances. *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995). Such "[d]ecisions on how to use the property during the marriage, including inherited property, bear most of the characteristics of a family decision." *Id.*; *accord In re Marriage of Hockenson*, No. 98-1956, 1999 WL 1072716, at *5 (Iowa Ct. App. Nov. 23, 1999). Here, although Theresa considered the condo to be hers alone, Todd "considered it a place for the family to go" and paid some bills for it. He also helped make cosmetic improvements to the property, including removing wallpaper, painting, and moving cabinets in the kitchen. And he contributed to the overall economic welfare of the parties during their thirty-two-year marriage with his salary. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000) (identifying factors for courts to consider in determining whether inherited property should be divided).

Under these circumstances, we find no inequity in the court's decision to include the appreciated value of the Branson condo that Theresa bought with her inheritance in its property division. *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) ("Iowa has a unique hybrid system that permits the court to divide inherited and gifted property if equity demands in light of the

circumstances of a spouse or the children."); *see also In re Marriage of Grady-Woods*, 577 N.W.2d 851, 853 (Iowa 1998) ("The critical inquiry is always whether the distribution is equitable in the particular circumstances.").

*3.      Mainstay account*

Because these same considerations apply to the Mainstay account that Theresa funded with the rest of her inheritance, we address that cross-appeal issue next. The value of that account at the time of trial was $17,842. Without much analysis, Todd claims the court should have considered the amount the account appreciated during the marriage—$10,000—as a marital asset. We disagree.

Unlike the condo that Theresa bought with most of her inheritance, her investment of the remainder in the Mainstay account did not bear the characteristics of a family decision. *Cf. White*, 537 N.W.2d at 746. She kept that account separate from Todd, who did not contribute to its care, preservation, or improvement. *See Goodwin*, 606 N.W.2d at 319; *cf. Fennelly*, 737 N.W.2d at 104 (stating that when dividing premarital property it is not appropriate "to emphasize *how* each asset appreciated—fortuitously versus laboriously—when the parties have been married for nearly fifteen years"). This part of her inheritance did not really change form like it did with the purchase of the Branson condo. *See White*, 537 N.W.2d at 746 (noting that in "situations in which the inherited property does not change in form following its receipt," there is merit to setting off its total value at the time of trial). We accordingly conclude it was not unjust to set aside the full value of this account to Theresa.

*4.     Business valuation*

Theresa next claims that her business should have been valued at $2700, rather than $27,544, because "[t]he furniture which was very old had basically no value.  The two rooms for the salon are only rented.  There is no real estate that the business owns.  There is no inventory and no accounts receivable."

Other than disputing Todd's valuation at trial, Theresa did not offer any testimony or evidence of her own to support what she believed the business was worth.  The only evidence the court received was from Todd, who offered an exhibit from a website with a formula for valuing hair salons.  The court relied on that exhibit, finding:

> The parties are light-years apart on the value of Theresa's business.  The Court finds that Theresa's asserted amount of value of $2,500[4] is as absurd as her income amount listed on the parties' tax returns.  The Court found Theresa's credibility to be lacking on the value of her salon and her income, among other financial issues.  Todd's demeanor and expressions were not anything exceptional, but Petitioner's Exhibit 16 is a credible estimate ($27,500) of what Custom Cuts' value actually is.  Overall, the Court found Todd to be the more credible witness, however, both parties are still in the process of emotionally processing their long marriage ending.

We again give weight to these credibility findings and the court's valuation, which was within the range of evidence.  *See Keener*, 728 N.W.2d at 194.

*5.     Jeep storage fees*

Moving on to the debt allocation, Theresa claims the storage fees for the Jeep should be assigned to Todd because "[h]e leveraged the vehicles, he stopped making the payments and caused the vehicles to be repossessed."  "Debts of the

---

[4] The record does not show where the figure of $2500 came from versus the $2700 that Theresa uses on appeal.

parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay." *See In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). Even assuming that Todd was responsible for the increased fees, "as long as the overall property distribution is equitable," *see id.*, there is no error. Because Todd was responsible for most of the marital debts—$149,293 compared to $20,138 for Theresa—we find no inequity in requiring Theresa to assume this debt. *See id.*

6. *Equalization payment*

This leaves us with Theresa's claim that she "should rightfully be paid traditional spousal support in addition to her share of the assets of the marriage." She argues "[t]here is no justification for failing to award an equalization payment . . . simply because she has needs which justify the award of spousal support." We agree.

Property division and spousal support are considered together in evaluating their individual sufficiency. *See* Iowa Code §§ 598.21(5)(h), .21A(1)(c); *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). That said, "they are distinguishable concepts with differing purposes." *In re Marriage of Steddom*, No. 13-0435, 2013 WL 6405375, at *1 (Iowa Ct. App. Dec. 5, 2013). "The division of marital property is based on the parties' respective rights to a just and equitable share of the property accumulated during the course of the marriage." *Id.* Spousal support, on the other hand, "is a stipend paid to a former spouse in lieu of the other spouse's legal obligation to provide financial assistance." *Id.*; *accord In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) ("The purpose of a traditional

or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued.").

Todd does not dispute that Theresa was entitled to the traditional spousal support of $500 per month awarded by the court until she is eligible for Medicare. Rather, he contends that the court correctly determined an equalization payment would not be equitable because he was saddled with more debt, Theresa received half of his retirement accounts, and she was awarded the income-producing condo. But even with those allocations, Todd received $132,185 more in assets under the district court's division than Theresa. And in marriages of long duration with an earning disparity, like this one, both spousal support and a nearly equal property division may be appropriate. *In re Marriage of Weinberger*, 507 N.W.2d 733, 735 (Iowa Ct. App. 1993). We find that is the case here.

**C.    Modification**

So how do our conclusions affect the result in this dissolution appeal? When the value of the land on which the marital home sits is removed from the marital estate, Todd's net property award decreases to $434,668.50. This leaves a difference of $83,485 between his award and Theresa's. To equalize the awards, we order Todd to pay Theresa $41,742.50. Because Todd does not have this amount in liquid assets, and a cash payment may be an undue burden on him, we direct Todd to make the payment through a qualified domestic relations order from his retirement funds. *See In re Marriage of Naber*, No. 16-1767, 2017 WL 3283315, at *5 (Iowa Ct. App. Aug. 2, 2017). Todd shall prepare the order and submit it to Theresa for her approval within ninety days from the date procedendo is issued.

**D.     Attorney fees**

Theresa requests $3500 in appellate attorney fees.  Given the mixed results of the appeals, the needs of each party, and their ability to pay, we deny her request.  *See   In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020).  Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**